# STATE OF MICHIGAN

# COURT OF APPEALS

In re KING, Minors.

UNPUBLISHED
July 28, 2015

No. 321921
Wayne Circuit Court
Family Division
LC No. 11-502387-NA

Before: SAWYER, P.J., and DONOFRIO and BORRELLO, JJ.

PER CURIAM.

Respondent mother, the mother of the nine minor children at issue in this appeal, appeals as of right the circuit court's orders terminating her parental rights to the children pursuant to MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). We affirm.

## I.  STANDARD OF REVIEW

Respondent mother challenges the sufficiency of the evidence in support of the statutory grounds for termination and the circuit court's finding that termination of her parental rights served the children's best interests. The petitioner bears the burden of proving a statutory ground for termination by clear and convincing evidence. MCL 712A.19b(3); *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). Once a statutory ground for termination is established by clear and convincing evidence, the circuit court must order termination if "termination of parental rights is in the child's best interests." MCL 712A.19b(5). This Court reviews for clear error a circuit court's decision to terminate parental rights. MCR 3.977(K). The clear error standard controls this Court's review of "both the court's decision that a ground for termination has been proven by clear and convincing evidence and, where appropriate, the court's decision regarding the child's best interest." *In re Trejo*, 462 Mich at 356-357. A decision qualifies as clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003). Clear error signifies a decision that strikes this Court as more than just maybe or probably wrong. *In re Trejo*, 462 Mich at 356. This Court "give[s] deference to the trial court's special opportunity to judge the credibility of the witnesses." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

## II.  MCL 712A.19b(3)(c)(*i*)

Respondent mother initially avers that the circuit court erred in terminating her parental rights to the oldest eight children under MCL 712A.19b(3)(c)(*i*). Respondent mother asserts that

-1-

she remedied the conditions that led to the children's adjudication and, with assistance, could eventually properly care for all of the children, provided that petitioner returned the children gradually.

In MCL 712A.19b(3)(c)(*i*), the Legislature authorized the termination of parental rights as follows:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

In October 2011, respondent mother admitted several of the allegations in a petition for temporary custody of seven children:  (1) on July 25, 2011, respondent Dean, the boyfriend of respondent mother and the father of her four youngest children, broke out a window in the front door to the home she shared with the children; (2) she felt overwhelmed caring for all the children; (3) on July 28, 2011, she contacted petitioner and expressed her desire to let petitioner care for her three youngest children because she could not handle them; (4) she failed to pursue either a January 2011 referral for prevention services or a June 2011 referral for mental health services; and (5) she and Dean shared a history of verbal abuse.  In September 2012, the circuit court authorized a supplemental petition requesting the termination of respondent mother's and Dean's parental rights.  The supplemental petition alleged that in June 2012, Children's Protective Services (CPS) received a referral concerning Dean's sexual abuse of two of respondent mother's oldest daughters.  A new baby fathered by Dean arrived in the circuit court's temporary jurisdiction in March 2013, on the basis of respondent mother's anticipatory neglect of the newborn.[1]  *In re Foster*, 285 Mich App 630, 631; 776 NW2d 415 (2009).

Petitioner arranged for respondent mother to participate in a multitude of services designed to improve her parenting skills and, between October 2011 and April 2014, respondent mother participated in and completed many of the services.  Although respondent mother completed multiple parenting classes, including one designed to assist mentally challenged parents, and received parenting instruction in the course of many supervised parenting times with different numbers of her children, the circuit court did not clearly err in finding clear and convincing evidence that in April 2014 respondent mother still lacked the capacity to parent the children.  The testimony of the two primary caseworkers agreed that respondent mother could not effectively manage at supervised parenting times groups as small as two or three of the children; that respondent mother usually interacted with the children appropriately at the

---

[1] The circuit court terminated Dean's parental rights to his five children pursuant to MCL 712A.19b(3)(b)(*i*), (g), and (j), and this Court affirmed that decision.  *In re King*, unpublished opinion per curiam of the Court of Appeals, issued March 18, 2014 (Docket No. 315762).

beginning and end of the parenting times; that respondent mother often tried some techniques for redirecting the children's behavior, but her redirection often did not succeed because the children usually ignored her; that respondent mother often became frustrated, stopped trying to redirect the children, sat down on a couch while the children played, and allowed her older children to parent the younger children; and the children sometimes physically fought or left the supervised area. The two primary caseworkers, as well as Amethyst Crawford, respondent mother's parent partner late in the proceedings, and Latasha Steward, a limited license therapist who also worked with respondent mother late in the proceedings, agreed that respondent mother often ignored their suggestions about what consequences she should impose on the children, including respondent mother's refusal to redirect a child from physically striking a caseworker, on the basis of respondent mother's unfounded belief that the child's violence was a proper reaction to advice from the worker intended to divert the children's attention from respondent mother; and that respondent mother also sometimes defended her manner of resolving a situation, or denied the existence of a child's behavior problem, including respondent mother's rationalization of a reason that a child had intentionally defecated in the kitchen sink at her foster home.

Furthermore, after respondent mother assaulted the first primary caseworker in front of the children during a February 2013 supervised visit, she and the substitute primary caseworker agreed that respondent mother would choose a dedicated team of people willing to assist her in parenting all nine children around the clock. Respondent mother chose her mother and two sisters as her support team, and they all agreed to the terms of the support team concept. Respondent mother also agreed to avoid Dean, who already had lost his parental rights to his five children. The substitute caseworker testified that the support team approach had worked briefly by allowing respondent mother, her mother, and a sister to work on disciplinary techniques involving smaller groups of children. But respondent mother's sisters soon stopped coming to help, respondent mother began making negative comments about her mother, and in August 2013, respondent mother's mother disclosed that respondent mother's sisters had stopped participating because respondent mother lied about and threatened them. Respondent mother's mother also expressed her intent not to participate in the support group after respondent mother made irrelevant and negative comments about her. Although the substitute caseworker arranged for respondent mother and her mother to participate in family therapy, respondent mother communicated in January 2014 that she no longer wanted her mother's help. Furthermore, respondent mother refused to substantiate any legal income or the status of her housing, concerning which the substitute caseworker testified that she had become substantially delinquent in her rent payments.

The record also clearly and convincingly established the unlikelihood that respondent mother would improve her parenting capacity within a reasonable time in light of the children's ages. The record contained abundant examples of respondent mother's inability to parent even smaller groups of her children, and the examples remained consistent over the long period that the oldest children spent in the court's temporary custody, irrespective that petitioner provided respondent mother with a reasonable array of services designed to improve her parenting skills. *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005) (observing that the petitioner generally must "make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan").

The unlikelihood that respondent mother might have the capacity to care for any or all of her children, most of whom had special needs, also arose from the clear and convincing evidence of her failure to benefit from the other services designed to prevent or enlighten her regarding any future involvement with Dean. Respondent mother completed domestic violence education, which petitioner provided on the basis of respondent mother's admissions that Dean had behaved violently toward her and the children. In 2012, supplemental petitions were filed alleging Dean's sexual abuse of two of respondent mother's children, the girls testified to Dean's acts of sexual abuse, and the circuit court terminated Dean's parental rights. Although respondent mother repeatedly promised to avoid Dean, she conceived another child with him in early 2013. Many witnesses testified that respondent mother failed to initially disclose her pregnancy and refused to identify Dean as the father of her ninth child. Many witnesses also agreed that respondent mother continually suggested that someone planted in her daughters' heads the idea of sexual abuse by Dean, and continually made excuses for Dean.

The circuit court did not clearly err in finding that clear and convincing evidence established that the primary reason for the 2011 placement of the oldest children in the circuit court's temporary custody, and the March 2013 arrival of the baby in the circuit court's temporary custody, namely, respondent mother's inability to properly parent or supervise the children, continued to exist in 2014. *In re Foster*, 285 Mich App at 635-636. The circuit court also did not clearly err in finding that clear and convincing evidence established that respondent mother was not reasonably likely to rectify these conditions within a reasonable time considering the ages of the eight oldest children, in light of respondent mother's minimal improvement in her capacity to parent during the nearly 33-month period that the oldest children spent in the circuit court's temporary jurisdiction, respondent mother's ongoing lack of insight into the potential harm to her and the children arising from her relationship with Dean, and her failure to substantiate her possession of stable housing or a legal income. *In re LE*, 278 Mich App 1, 28; 747 NW2d 883 (2008). We decline to disturb the circuit court's rejection of Crawford's and Steward's opinions that, with up to 10 hours of daily in-home services, respondent mother could properly and immediately parent some of the oldest and youngest children, and could parent all the children with assistance at an unspecified future date. *In re HRC*, 286 Mich App at 459. The record supports the circuit court's criticisms that respondent mother had lied to Crawford and Steward, they did not know about the entire history of this lengthy proceeding, and any ongoing in-home services involvement depended on respondent mother's voluntary participation.

Although the plain language of MCL 712A.19b(3) requires clear and convincing evidence of only one statutory ground to warrant the termination of parental rights, we briefly address the additional grounds that respondent mother challenges on appeal.

### III. MCL 712A.19b(3)(c)(*ii*)

In MCL 712A.19b(3)(c)(*ii*), the Legislature authorized termination of parental rights as follows:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

-4-

\* \* \*

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and . . . a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

The evidence of Dean's sexual abuse of two of the children, which petitioner discovered in 2012, constituted another condition that caused the children "to come within the court's jurisdiction." The record clearly and convincingly reflects that respondent mother repeatedly received advice concerning the importance of preventing any contact between Dean and respondent mother or the children, and respondent mother received multiple opportunities to demonstrate her understanding of the importance of preventing any contact with Dean. Clear and convincing evidence also proved that instead of avoiding Dean, respondent mother continued to produce children with him, lied about the existence of a relationship with him, and blamed others for Dean's conduct. Furthermore, clear and convincing evidence established the unlikelihood that respondent mother might recognize and rectify Dean's danger to the children within a reasonable time considering the ages of the eight oldest children, in light of respondent mother's repeated and ongoing failure to recognize this potential danger after becoming aware of it in 2012, her failure to improve her parenting skills, and her failure to prove her possession of stable housing or a legal income. *In re LE*, 278 Mich App at 28.

## IV. MCL 712A.19b(3)(g)

Respondent mother next challenges the circuit court's invocation of MCL 712A.19b(3)(g) as a basis for terminating her parental rights to the children. Pursuant to MCL 712A.19b(3)(g), a circuit court can terminate a respondent's parental rights "if the court finds, by clear and convincing evidence," "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." The evidence that clearly and convincingly established the propriety of terminating respondent mother's parental rights under MCL 712A.19b(3)(c)(*i*) and (c)(*ii*) likewise clearly and convincingly established respondent mother's failure to properly care for, protect, or supervise the children and her current inability to parent, protect, or supervise them. *In re JK*, 468 Mich at 213-214. As summarized above, respondent mother failed to properly care for the children when she sought parenting assistance from petitioner because she could not handle her youngest children, left some of the children unsupervised and unfed, and associated with Dean, who became violent in the children's presence and sexually abused respondent mother's two oldest children. Overwhelming evidence established the unlikelihood that respondent mother might meaningfully improve her parenting skills within a reasonable time given the children's ages, including the wealth of evidence concerning respondent mother's failure to improve her parenting skills even after participating in many specialized services, respondent mother's violation of her repeated promise to avoid Dean, including her conception of another child with him in early 2013, respondent mother's failure to initially disclose her pregnancy with another of Dean's children, respondent mother's refusal to identify Dean as the father of her ninth child,

respondent mother's continual suggestions that someone had planted in her daughters' heads the idea of sexual abuse by Dean, respondent mother's repeated making of excuses for Dean, the special needs of most of respondent mother's children, and the long period of time the seven oldest children languished in foster care. *In re LE*, 278 Mich App at 28.

## V. MCL 712A.19b(3)(j)

With respect to the circuit court's reliance on MCL 712A.19b(3)(j), respondent mother insists that no evidence reasonably suggested that any of the children faced a risk of harm in her custody. A circuit court can terminate parental rights if the record clearly and convincingly establishes that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." MCL 712A.19b(3)(j). Although petitioner included subsection 19b(3)(j) as a ground for termination only in the petition regarding the youngest child, the record equally established, clearly and convincingly, its applicability to all nine children. The previously summarized evidence clearly and convincingly established that, given respondent mother's capacity and conduct, including her continued association with Dean, the children faced substantial risks of both emotional and physical harm in her custody.

## VI. BEST INTERESTS

Respondent mother lastly argues that the circuit court erred in finding that termination of her parental rights served the children's best interests. "Even if the trial court finds that the [petitioner] has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children. MCL 712A.19b(5)." *In re Gonzales/Martinez*, ___ Mich App ___; ___ NW2d ___ (Docket No. 324168, issued May 5, 2015), slip op at 4. "The children's bond to the parent, the parent's parenting ability, and the children's need for permanency, stability, and finality are all factors for the court to consider in deciding whether termination is in the best interests of the children." *Id*. Although respondent mother and the children shared a bond, respondent mother made no improvement in her parenting ability or insight regarding her relationship with Dean, the older children spent approximately 33 months in foster care, the two younger children spent their entire lives in foster care, and most of the children had special needs. The circuit court did not clearly err in finding that termination of respondent mother's parental rights served the children's strong needs for permanency.

Affirmed.

/s/ David H. Sawyer
/s/ Pat M. Donofrio
/s/ Stephen L. Borrello

-6-