# STATE OF MICHIGAN

# COURT OF APPEALS

In re AL HARRIS, Minor.

UNPUBLISHED
August 25, 2015

No. 325083
Oakland Circuit Court
Family Division
LC No. 13-809645-NA

Before: RONAYNE KRAUSE, P.J., and GLEICHER and STEPHENS, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to minor child ALH pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (h). On appeal, respondent challenges the trial court's findings regarding the statutory grounds for termination and the best interest determination. We affirm.

## I. STATUTORY GROUNDS

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). The trial court's finding that a statutory ground has been proven by clear and convincing evidence is reviewed for clear error. *Id*. A finding is clearly erroneous if this Court is left with a definite and firm conviction that a mistake has been made, giving due regard for the trial court's credibility determinations. *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013).

A trial court may terminate a respondent's parental rights if it finds that (1) a statutory ground under MCL 712A.19b(3) has been established by clear and convincing evidence and (2) termination is in the child's best interest. MCR 3.977(F); *In re Fried*, 266 Mich App 535, 540-541; 702 NW2d 192 (2005). In this case, the trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g) and (h). Respondent contends that the trial court clearly erred on all three grounds. We disagree. MCL 712A.19b(3)(h) provides:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *

-1-

(h) The parent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years, and the parent has not provided for the child's proper care and custody, and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

The two-year period begins at the termination hearing and includes the time of incarceration in addition to the time required to provide the child with a suitable home after release. See *In re Perry*, 193 Mich App 648, 650; 484 NW2d 768 (1992). Subsections (3)(c)(*i*) and (3)(g) "are factually repetitive and wholly encompassed by MCL 712A.19b(3)(h)." *In re Mason*, 486 Mich 142, 165; 782 NW2d 747 (2010).

The incident leading to respondent's incarceration was her involvement in a car accident that she admitted was an intentional suicide attempt. Instead of harming herself, respondent killed a passenger in another vehicle. She was arrested immediately after the accident, leaving ALH without appropriate custody or care. She later pleaded guilty to manslaughter with a motor vehicle, MCL 750.321, and reckless driving causing serious bodily impairment, MCL 257.626(3), and was sentenced to 5 to 15 years' imprisonment. The termination hearing occurred between August 2014, and October 2014, and respondent's earliest possible release date was in May 2019, well beyond the two-year mark. The Department of Health and Human Services (DHHS) first placed ALH with a foster care family, but then moved her into a placement with respondent's sister, Taylor Brown. Respondent expected that she would remain dependent upon Brown to care for ALH even after her release until she could secure employment and proper housing. Accordingly, the trial court did not err in finding that the first element of MCL 712A.19b(3)(h) was supported by clear and convincing evidence; respondent was incarcerated, depriving ALH of a normal home for more than two years.

The second element is that the parent has failed to provide for the child's proper care and custody. MCL 712A.19b(3)(h). A respondent may avoid termination of her rights by arranging for a relative to provide care for the child during incarceration. *In re Mason*, 486 Mich at 161, 163-165. Respondent argues that there was no statutory basis for termination because she had a plan for Brown to care for ALH.

Respondent testified that she and Brown had an informal agreement that Brown would care for her children if anything happened while respondent mother was serving in the United States Navy. Respondent had been discharged from the Navy seven years before the car accident. Further, respondent asserted that she completed guardianship papers which Brown sought to enforce in a different court action while the child protective proceedings were ongoing. However, respondent provided no documentation to support these claims. Assigned foster care worker, Jennifer Vasilovski of Catholic Charities of Southeastern Michigan (CCS), testified respondent had no preexisting plan for ALH's care and that DHHS and CCS arranged the placement with Brown. In the absence of documentary proof to support respondent's claims, the trial court found Vasilovski to be the more credible witness. Typically, "this Court accords deference to the special opportunity of the trial court to judge the credibility of the witnesses." *In re Fried*, 266 Mich App at 541; MCR 2.613(C). Deference is particularly warranted in this case, where the trial court's credibility determination was supported by the record as a whole.

The trial court did not clearly err in crediting Vasilovski's claim that respondent had not planned for ALH's care.

Finally, there was "no reasonable expectation that [respondent] will be able to provide proper care and custody within a reasonable time" considering ALH's age. MCL 712A.19b(3)(h). A parent's compliance with a parent agency agreement is evidence of her ability to provide proper care and custody as contemplated in the statute. See *In re JK*, 468 Mich 202, 214; 661 NW2d 216 (2003) ("The respondent in this case fulfilled every requirement of the parent-agency agreement. Her compliance negated any statutory basis for termination."). The trial court acknowledged that respondent had done what she could to comply with her parent agency agreement by receiving mental health services, attending parenting classes, and otherwise taking advantage of the programs available to her in jail and prison. She had not obtained employment or proper housing, though Vasilovski acknowledged that it was "not really feasible" for her to do so while she was serving her sentence. Yet the trial court found that "even if mother had completed parenting classes and had completed some type of therapeutic process . . . we'd still be looking at the reasonable time considering the child's age." That is, regardless of respondent's fitness as a parent, it would be unreasonable for eight-year-old ALH to wait roughly 4 ½ years for respondent's release from prison, and possibly longer than that, since respondent agreed she would need additional time to find a job and an appropriate home. This finding was supported by Vasilovski's testimony that ALH needed the stability of a normal home life without the interruptions she would face if she remained in the foster care system. Brown also favored termination so that she could adopt ALH. Brown needed financial assistance to provide for ALH and DHHS was more likely to approve an adoption subsidy than a guardianship subsidy. The trial court did not clearly err in finding that termination was appropriate under MCL 712A.19b(3)(c)(*i*), (g), and (h).

## II. BEST INTEREST

Respondent next argues that the trial court clearly erred in finding that termination of her parental rights was in ALH's best interest. We disagree.

This Court reviews a trial court's finding that termination is in a child's best interest for clear error. *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction a mistake has been made." *Id*. Whether termination of parental rights serves the child's best interest must be proven by a preponderance of the evidence. *In re Moss*, 301 Mich App at 90.

"In deciding whether termination is in the child's best interest, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (internal citations omitted). Psychological evaluations, parenting techniques, and age of the child are also relevant. See *In re Jones*, 286 Mich App 126, 129-130; 777 NW2d 728 (2009). Placement of the child with a relative "weighs against termination under MCL 712A.19a(6)(a)," and must be considered as part of the best interest determination. *In re Olive/Metts*, 297 Mich App at 43.

Respondent first contends that the trial court failed to consider her bond to ALH in the best interest ruling. This is incorrect. Respondent's relationship with ALH was an acknowledged factor in the trial court's findings. Though the bond between parent and child was undisputed, Vasilovski and Sulfaro recommended termination of respondent's parental rights. Vasilovski testified that it was not in ALH's best interest to remain in the foster care system for the remainder of respondent's five-year minimum prison sentence. "I mean, I don't think it's beneficial for any child to grow up living their life in the foster care system, having a social worker make all the decisions, and come out to their home, and have to interview them every, you know, month or so." Termination of respondent's parental rights would also allow Brown to adopt ALH, providing her with the stability and security of a consistent parental figure "without social workers in and out of her life constantly."

Respondent's "extensive mental health history" also weighed in favor of termination. Respondent has a pattern of self-destructive behaviors, including two prior suicide attempts, the most recent of which resulted in the death of another person and the initiation of this case. Sulfaro stated that respondent minimized these problems in her psychological evaluation. She attributed her hallucinations and efforts to commit "self-harm" to various medications. While respondent argues that her mental health has not impacted ALH thus far, she could not identify who was watching ALH on the day of the accident. She had also made poor decisions regarding her children in the past. When she served in the Navy, respondent left her oldest daughter, AB,[1] in the care of her maternal grandmother, against whom respondent mother had made previous allegations of physical abuse. As a teenager, AB accused respondent mother of physical abuse, leading Sulfaro to believe that respondent may have been repeating the abuse she experienced in her own childhood as a "learned behavior" with AB. The trial court, in its superior position to view the witnesses, was entitled to credit Sulfaro's belief that respondent's mental and emotional instability posed a threat to ALH in the long run. See, e.g., *In re TK*, 306 Mich App 698, 710; 859 NW2d 208 (2014) (deferring to the trial court's reliance on clinician's recommendations). Significant evidence supported the trial court's finding that "though the child is bonded with mother the risk of potential harm to the child does far outweigh any positive parenting that mother could provide in the future."

Respondent mother further asserts that the trial court ignored the fact that ALH was placed with a relative. See *In re Olive/Metts Minors*, 297 Mich App at 43. This claim is contrary to the record. The trial court acknowledged that ALH's placement with her maternal aunt weighed against termination. Nevertheless, the trial court found that ALH's need for permanency and safety should not be outweighed by the fact that she was placed with a relative, especially where that relative, Brown, was willing to adopt ALH and provide her with a stable home. A child's placement with relatives is only one of many factors to consider in the best interest determination. See *In re Olive/Metts Minors*, 297 Mich App at 42 (listing the child's need for "permanency, stability, and finality" as other factors). The trial court was not required to treat the relative placement as decisive in light of ALH's need for permanency. Sulfaro

---

[1] AB is now an adult was not subject to the termination proceedings. She is identified by her initials because she was a minor at the time of the incidents discussed *infra*.

testified that respondent's mental health would remain a risk to ALH if she "had any part in planning" for ALH's future. It was not clear error for the trial court to prioritize ALH's needs for stability and safety above respondent mother's desire to continue a relationship with her child. See *In re Foster*, 285 Mich App 630, 635; 776 NW2d 415 (2009) ("[O]nce a statutory ground is established, a parent's interest in the care and custody of his or her child yields to the state's interest in the protection of the child."). The trial court did not clearly err in finding that termination of respondent's parental rights was in ALH's best interest.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens