# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* WELLS, Minors.

UNPUBLISHED
September 22, 2016

No. 330177
Ingham Circuit Court
Family Division
LC No. 13-000233-NA

Before: JANSEN, P.J., and K. F. KELLY and O'BRIEN, JJ.

PER CURIAM.

Respondent appeals as of right the circuit court's October 14, 2015 order terminating her parental rights to the minor children, NW and MW, pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j). We affirm.[1]

NW was removed in January 2013 based on allegations that NW's father, who had custody of NW, engaged in what was characterized as "inappropriate horseplay" with his then-girlfriend's son.[2] He admitted to the allegations in the petition, and the circuit court assumed jurisdiction over NW. Respondent was not identified as a respondent until an emergency petition was filed in July 2013 after it was determined that respondent was living with NW's father in violation of a court order. Respondent, who has a history of substance abuse, tested positive for heroin and marijuana at that time and was ordered to participate in various services and refrain from the use of controlled substances.[3] Several months later, after she became pregnant with MW and while she was treating with methadone, respondent relapsed.

As a result of the Michigan Supreme Court's decision in *In re Sanders*, 495 Mich 394; 852 NW2d 524 (2014), a supplemental petition alleging respondent's unfitness as a parent was filed. Respondent admitted to various allegations contained in the petition, including that she was using heroin "almost everyday." MW was born shortly thereafter displaying signs of withdrawal, and the circuit court eventually assumed jurisdiction over MW by way of

---

[1] The parental rights of the children's fathers are not at issue in this appeal.

[2] According to respondent, NW's father "was the sole guardian" of NW as part of an "agreement through the Friend of the Court" after she tested positive for methamphetamines.

[3] Respondent testified that she was incarcerated from August 2013 to December 2013.

respondent's plea to allegations including those involving heroin use. As of October 2014, it was reported that respondent was consistently receiving methadone treatments and had been "clean" for 60 days as well as that she had behaved appropriately during parenting-time visits. Respondent remained negative for heroin as of March 2015; however, newfound concerns arose regarding respondent's parenting time, including reports that respondent was struggling to manage stress and frustration. Respondent was therefore referred to services to "learn techniques" for doing so, but respondent did not follow through with that referral.

On June 15, 2015, ten days before a permanency-planning conference was scheduled, the children's guardian ad litem filed, and the circuit court granted, a motion to suspend respondent's and NW's father's parenting time as a result of NW's therapist's reports that NW's parents had exposed NW to "disturbing experiences," including, most notably, an incident where respondent showed NW photographs of a fetus from her recent miscarriage and asked NW to name the fetus.[4] According to a Department of Health and Human Services (DHHS) employee, Kera Wagner, respondent was also "not . . . completing services to help maintain her sobriety" as required and struggling during parenting times. As a result, the circuit court determined that respondent should initiate termination proceedings.

At subsequent evidentiary hearings, Wagner testified that, while respondent had been sober for "over a year," "her methadone treatments ha[d] gone up, not down" and she had missed screens at the end of July and beginning of August. Wagner testified that while respondent was originally providing verification of her attendance at NA meetings, she had admittedly failed to do so since June 2014. Wagner also testified that respondent had not provided employment verification, had failed to participate in a variety of services that were offered to her, was acting inappropriately during parenting times, and had refused to participate in parenting classes. The circuit court found clear and convincing evidence to support termination pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j), found that termination was in the children's best interests, and thus terminated respondent's parental rights. This appeal followed.

On appeal, respondent focuses on the fact that, while she was involved in this case beginning in January 2013, her parental rights were not adjudicated until June 2014, nearly a year-and-a-half later. With this timeframe in mind, she argues that the circuit court's order terminating her parental rights should be vacated because she was not provided sufficient time to benefit from the services that were provided to her between June 2014 and October 2015. Therefore, she contends, the termination of her parental rights was premature. We disagree.

This Court reviews a circuit court's determination that at least one statutory ground for termination has been proved by clear and convincing evidence and a circuit court's

---

[4] According to Wagner, respondent originally asked to bring in "black and white" pictures of "the baby's hands and feet," but she also brought in "color images of a deceased fetus that was kind of purplish, reddish and kind of black and blue looking and were just overall very disturbing, very much different that the ones she had shown [her] in black and white[.]" After respondent asked NW to name the fetus, NW "would sit up a[t] night," "talk about how that baby looked," and "struggle[] a lot with trying to find the right name to give her deceased baby sister."

determination that the termination of parental rights is in the child's best interests for clear error. *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009). A circuit court's determinations in this regard are clearly erroneous if we are left with a definite and firm conviction that a mistake has been made. *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003). To terminate parental rights under MCL 712A.19b(3), only one statutory ground need be proven. *In re Williams*, 286 Mich App at 271; see also *In re Trejo Minors*, 462 Mich 341, 355; 612 NW2d 407 (2000).

In this case, the record reflects, contrary to respondent's arguments, that respondent was provided with sufficient time to benefit from the services that were provided. While it is undisputed that DHHS is required to make reasonable efforts to reunify a child with his or her parents during termination proceedings, *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005), it is equally undisputed that "there exists a commensurate responsibility on the part of respondents to participate in the services that are offered," *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). Here, although we recognize that respondent had made progress in addressing her substance abuse, the circuit court did not clearly err in observing that this condition nevertheless continued. Respondent's lengthy history of substance abuse, increasing methadone treatments, missed drug screens, failure to verify NA-meeting attendance, refusal to participate in parenting classes, failure to participate in a variety of other services, and use of heroin during pregnancy supported the circuit court's determination in this regard.[5] Thus, the circuit court did not clearly err in terminating respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), and, as stated above, only one statutory ground need be proven. Nevertheless, this evidence, coupled with the fetus-photograph incident, respondent's stress-management struggles, the lack of employment verification, and respondent's refusal to participate in parenting classes, supported the circuit court's determination with respect to MCL 712A.19b(3)(g) and (j) as well. Furthermore, while not specifically challenged by respondent on appeal, we also conclude that termination of respondent's parental rights was in the children's best interests for similar reasons, especially in light of the children's need for permanency.[6]

On appeal, respondent likens the facts of this case to those of *In re Boursaw*, 239 Mich App 161, 173; 607 NW2d 408 (1999), a termination case in which this Court reversed the termination of a parent's parental rights based on its belief that "the steps taken by respondent since the . . . review hearing evidence that termination was premature." This conclusion relied, in pertinent part, on the fact that the respondent's counselor "believed the possibility existed that respondent would ultimately achieve . . . a level of functioning" sufficient to parent. *Id*. This

---

[5] Respondent apparently refused parenting classes, claiming "that she didn't feel that she needed them" and eventually "cancel[ing] all subsequent classes[.]" The record additionally reflects that, to the extent she did participate in other services, "she wasn't actually gaining anything from them."

[6] While the record does reflect a bond, but not necessarily a strong bond, between the children and respondent, it also reflects that the children, primarily NW, would often act out, behave aggressively, and "have meltdowns," which Wagner attributed to their interactions during parenting time.

type of evidence is simply not present in this case. Conversely, the record reflects that, while respondent had tested negative for heroin, her methadone treatments were increasing, she was failing to participate in ordered services, and other concerns were arising as the case proceeded. Accordingly, we find *Boursaw* distinguishable. We also reject respondent's reliance on *In re RC*, unpublished opinion per curiam of the Court of Appeals, issued July 22, 2003 (Docket No. 245675), a nonbinding case relying on *Boursaw*, in light of the distinguishing factors, e.g., where the petitioner's only witness at the termination hearing testified that termination was *not* in the child's best interests, present in that matter as well.

Affirmed.

/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly
/s/ Colleen A. O'Brien

-4-