# S T A T E   O F   M I C H I G A N
# C O U R T   O F   A P P E A L S

*In re* GRAY, Minors.

UNPUBLISHED
November 14, 2017

No. 338069
Washtenaw Circuit Court
Family Division
LC Nos. 15-000019-NA;
15-000020-NA;
15-000021-NA

Before:  M. J. KELLY, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

Respondent appeals as of right the trial court order terminating his parental rights to the minor children under MCL 712A.19b(3)(g) (failure to provide proper care and custody). Because there are no errors warranting relief, we affirm.[1]

## I.  BASIC FACTS

The trial court assumed jurisdiction over the minor children in February 2015 after they became the subject of a human trafficking investigation by the Federal Bureau of Investigation (FBI).  The petition alleged that respondent failed to protect the minor children by allowing them to be physically and sexually abused and by failing to prevent the abusers from having continued contact with them.  The petition further alleged that respondent's intellectual disability prevented him from providing a safe environment for the minor children.

Respondent's treatment plan required him to attend trauma therapy, find suitable housing, and participate in services designed to instill parenting and independent living skills. Respondent completed two parenting courses through the MSU Extension program and actively participated in Home Again, a hands-on parenting program.  Respondent also attended individual therapy through Catholic Social Services.  However, beginning in February 2016, respondent began missing a majority of his scheduled parenting time, the minor children's medical

---

[1] The children's mother voluntarily relinquished her parental rights to her daughters.  Her parental rights to her son, as of May 2017, remained intact, and DHHS was working toward appointing a legal guardian for her son and placing him with his mother.

appointments, and their school functions. Respondent refused the caseworker's referrals for disability programs, a literacy course with Wayne County, trauma therapy with the University of Michigan, and housing assistance. Respondent also stopped attending his individual therapy with Catholic Social Services.

Following a May 2016 neuropsychological evaluation, the evaluator concluded that, despite respondent's efforts, his intellectual disability caused him to have difficulties in holding employment, managing affairs, understanding relationships, and parenting. The evaluator further opined that this intellectual disability affected respondent's ability to provide a safe and stable environment for the minor children.

By March 2017, respondent had not visited the minor children in nearly six months, with the exception of one visit in November 2016. Respondent also had not contacted DHHS since October 2016, and he refused to participate in any services. Following an April 2017 termination hearing, the trial court terminated respondent's parental rights to the minor children.

## II. REASONABLE REUNIFICATION EFFORTS

### A. STANDARD OF REVIEW

Respondent argues that the trial court erred by terminating his parental rights because DHHS did not modify its service plan to accommodate his intellectual disability, as required by the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*.[2] This Court reviews a preserved issue regarding reasonable efforts for clear error. *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). "A finding of fact is clearly erroneous where the reviewing court is left with a definite and firm conviction that a mistake has been made." *In re Terry*, 240 Mich App 14, 22; 610 NW2d 563 (2000).

### B. ANALYSIS

"Under Michigan's Probate Code, [DHHS] has an affirmative duty to make *reasonable* efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, ___ Mich ___; 893 NW2d 637 (2017) (emphasis added). "The adequacy of [DHHS]'s efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009) (opinion by CORRIGAN, J.). A trial "court is not required to terminate parental rights if the State has not provided to the family of the child . . . such services as the State deems necessary for the safe return of the child to the child's home." *Id.* at 105 (citation and quotation marks omitted). "While [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are

---

[2] Respondent does not argue that the trial court clearly erred by finding clear and convincing evidence to terminate his parental rights under MCL 712A.19b(3)(g), nor does he argue that the trial court erred by finding by a preponderance of the evidence that termination of his parental rights was in the children's best interests. Accordingly, we will not address those issues further.

offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). Moreover, DHHS is only required to offer *reasonable* services, which means that it has no duty to provide every conceivable service. See *Hicks/Brown*, ___ Mich at ___; 893 NW2d at 639.

DHHS's obligation to provide services is subject to the requirements of the ADA, *In re Terry*, 240 Mich App 14, 25-26; 610 NW2d 563 (2000), which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 USC 12132. Accordingly, DHHS is required to make reasonable modifications to its service plan to avoid discrimination on the basis of disability. *In re Hicks/Brown*, ___ Mich at ___; 893 NW2d at 640. Where DHHS fails to modify its service plan to accommodate a disability under the ADA, DHHS has failed to make reasonable efforts toward reunification. *Id*.

In the present case, DHHS was fully aware of respondent's intellectual disability. Respondent's first psychological evaluation was conducted in January 2015, before the current proceedings began, and it indicated that respondent was cognitively impaired. The petition included the results of this psychological evaluation and further alleged that respondent's limited intellectual functioning created an unsafe environment for the minor children. Moreover, throughout the proceedings, the trial court, DHHS, the minor children's lawyer-guardian ad litem, and respondent repeatedly referenced respondent's intellectual disability.

Because DHHS was aware of respondent's disability, it was required to make reasonable modifications to its service plan to accommodate this disability. *In re Hicks/Brown*, ___ Mich at ___; 893 NW2d at 640. In May 2015, due to concern from respondent's lawyer, a caseworker, Brittney Reynolds, narrowed the scope of respondent's treatment plan to only focus on parenting education, independent living, mental health issues, and housing. The record reflects that Reynolds amended respondent's treatment plan to accommodate respondent's intellectual disability and ensuring his best chance of a successful reunification with the children. Additionally, Reynolds and other caseworkers provided respondent with more extensive and extended services to accommodate his intellectual disability. Reynolds referred respondent to Home Again, a hands-on parenting program, wherein respondent was assigned a therapist to provide him with immediate feedback concerning his parenting skills. Reynolds later arranged for an extension of Home Again's programming for respondent.

Furthermore, although respondent was initially rejected from some services, Reynolds arranged for respondent to receive individualized therapy through Catholic Social Services. Reynolds also arranged for family therapy with CSTS, although this therapy ultimately did not take place due to a minor child's unwillingness to participate. In 2016, another caseworker, Elaine Jones, arranged referrals for respondent to trauma therapy with the University of Michigan, to Comprehensive Services for Developmentally Disabled, and to a GED program with specialization for the cognitively impaired.

On appeal, respondent complains that the neuropsychological evaluation was not completed until May 2016. The record, however, shows that the delay was the result of bureaucratic confusion and that DHHS caseworkers continuously worked toward respondent receiving the evaluation. While the delay in receiving this evaluation was not ideal, the

neuropsychological evaluation was largely consistent with respondent's January 2015 psychological assessment. In other words, DHHS was aware long before respondent's neuropsychological evaluation that he had an intellectual disability and was already providing accommodated services in response to his disability. It is unclear what exact benefit respondent believes he was denied by the delay of the neuropsychological evaluation.

Finally, respondent argues that DHHS did not accommodate him properly because it communicated with him largely via text message despite his literacy problems. As an initial matter, respondent never raised the issue of text message communication as an issue throughout the proceedings. Furthermore, the record reflects that respondent used text messaging and preferred it because it maintained a record of communication. In addition, DHHS records also reflect that its caseworkers also communicated with respondent via phone calls. Therefore, there is no reversible error arising from the use of text messaging as one method of communication in this case.

In sum, considering the extensive and targeted services provided by DHHS throughout the proceedings, the trial court did not err by finding that the DHHS made reasonable accommodations to its service plan to address respondent's disability and rendered reasonable efforts towards reunification. See *In re Hicks/Brown*, ___ Mich at ___; 893 NW2d at 640.

The trial court did not err by terminating respondent's parental rights to the minor children.

Affirmed.

/s/ Michael J. Kelly
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra