# STATE OF MICHIGAN

# COURT OF APPEALS

In re BAILEY, Minors.

UNPUBLISHED
June 7, 2018

No. 340282
Gladwin Circuit Court
Family Division
LC No. 16-000124-NA

Before: O'CONNELL, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to two minor children, HB and JB, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm).[1] We affirm.

HB and JB were removed from respondent's home because of improper supervision and respondent's failure to acknowledge and address HB's threatened suicide and self-harming behaviors. Respondent argues that reversal is warranted because the Department of Health and Human Services (DHHS) failed to expend reasonable efforts to reunify the family by not making reasonable accommodations to account for respondent's mental health issues.

This issue is unpreserved because respondent failed to object to the adequacy of the services DHHS provided. See *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). "The time for asserting the need for accommodation in services is when the court adopts a service plan . . . ." *Id*. (quotation marks and citation omitted). This Court reviews for clear error the trial court's findings of fact in termination proceedings, including whether DHHS made reasonable efforts to provide a respondent with services aimed at reunification. *In re Fried*, 266 Mich App 535, 541-543; 702 NW2d 192 (2005). However, we review unpreserved issues for "plain error affecting substantial rights." *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). An "error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*. at 9.

---

[1] The children's father's parental rights were previously terminated. He is not a party to this appeal.

"Under Michigan's Probate Code, [DHHS] has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks*, 500 Mich 79, 85; 893 NW2d 637 (2017). Reasonable efforts begin with the creation of a case service plan aimed at rectifying the conditions that caused the child's removal. *In re Fried*, 266 Mich App at 542. The service plan must include a "[s]chedule of services to be provided to the parent . . . to facilitate the child's return to his or her home . . . ." MCL 712A.18f(3)(d). "Public entities, such as [DHHS], must make 'reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless . . . the modifications would fundamentally alter . . . the service' provided." *In re Hicks*, 500 Mich at 86, quoting 28 CFR 35.130(b)(7) (2016). "While [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. The respondent must demonstrate that the services provided were sufficiently beneficial. *Id*.

Respondent relies on *In re Hicks*, 500 Mich at 82-83, in which the respondent-mother was intellectually disabled, to support her argument. In *In re Hicks*, 500 Mich at 84, the respondent's attorney requested accommodations several times prior to the termination hearing. Despite the trial court's consequent order granting respondent's counsel's request for accommodations, DHHS did not modify the case service plan to make those accommodations. *Id*. at 89-90. Therefore, termination was improper because "efforts at reunification cannot be reasonable under the Probate Code unless [DHHS] modifies its services as reasonably necessary to accommodate a parent's disability." *Id*. at 90.

In this case, unlike *In re Hicks*, respondent's attorney did not request an accommodation or argue that the case service plan was unworkable because of respondent's depression or anxiety. During implementation of the case service plan, respondent was diagnosed with major depression and generalized anxiety disorder. DHHS identified respondent's struggle with mental health issues from the outset of the case in March 2016. Respondent was already engaged in weekly therapy at that time. She was twice encouraged to seek a psychiatric evaluation, yet she repeatedly delayed scheduling a psychiatric evaluation. She finally underwent a psychiatric evaluation and was prescribed medication in May 2017, fourteen months after the beginning of the case. By the time of the termination hearing in September 2017, she had already discontinued the medication.

The record contains no indication that respondent's anxiety and depression prevented her from taking advantage of psychiatric care. Instead, respondent was given many opportunities to pursue psychiatric care, but she put them off and discontinued prescribed medication. Her failure to take advantage of those services, in addition to her quick discontinuation of the recommended medication, belies the assertion that she would have fared better had DHHS offered additional services. Moreover, respondent does not identify what additional services DHHS should have offered or how DHHS should have modified the case service plan to accommodate respondent's mental health diagnoses, particularly when she demonstrated an aversion to the prescribed medication.

Additionally, respondent was recommended to take part in long-term individual therapy and family therapy, and she did so consistently. Her therapist testified that respondent was

cooperative and had made progress on relaxation skills and recognizing triggers that exacerbated her anxiety and depression. However, psychological evaluations in May and June 2016 described respondent as being in "denial" and externalizing responsibility for her circumstances, which created an environment that was not conducive to the children's emotional development. One year later, despite participating in therapy, respondent's follow-up psychological evaluation established that respondent did not make progress in taking responsibility and that respondent continued to blame her daughter and Child Protective Services (CPS) for the continuation of the termination proceeding without acknowledging her role. The evaluation further noted that respondent's lack of progress made it difficult for her to benefit from services provided so as to reduce the risk to the children if they were to return to respondent's home. The children's therapist testified that respondent continued to "victim-blame" them and that she refused to support and validate their feelings, which was essential to their recovery. At the termination hearing, respondent was only able to admit "some" responsibility for the children's removal, explaining that she was unable to supervise the children because of her limitations following surgery instead of recognizing her own emotional instability. Further, she continued to blame CPS for the removal, and she described HB as "deceitful" and a "sociopath."

Respondent's sole argument on appeal is that reasonable efforts were not made to reunify the family. Nonetheless, the "contention that reasonable services were not offered ultimately relates to the issue of sufficiency" of the evidence for termination of parental rights. *In re Fried*, 266 Mich App at 541. In this case, the trial court did not clearly err by finding that respondent's untreated mental health issues and other issues leading to adjudication continued to exist at the time of the termination hearing and that there was a reasonable likelihood of harm to the children if they were returned to her custody. Respondent participated in counseling and therapy, but she chose not to seek out and benefit from psychiatric care. Furthermore, respondent's parental rights were terminated because she continued to externalize blame and she failed to benefit from the psychological and psychiatric care that she did receive. Although respondent participated in counseling, it was evident at the termination hearing that she did not sufficiently benefit from counseling because she was still unable to recognize her own responsibility and continued to blame CPS and HB. In short, respondent has not shown that her inability to benefit from the services offered resulted from unreasonable efforts or DHS's failure to make a reasonable accommodation.

We affirm.

/s/ Peter D. O'Connell
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan