*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* Z. M. Taylor, Minor.

UNPUBLISHED
March 24, 2022

No. 358250
Kalamazoo Circuit Court
Family Division
LC No. 2019-000075-NA

Before: O'BRIEN, P.J., and SHAPIRO and BOONSTRA, JJ.

PER CURIAM.

Respondent-mother appeals as of right the order terminating her parental rights to the minor child, ZMT, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (other conditions exist that cause the child to come within the court's jurisdiction), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood that child would be harmed if returned to the parent). We affirm.

## I. BACKGROUND

Respondent has a history with Children's Protective Services (CPS) dating back to 2017 for maintaining an unfit home and improperly supervising ZMT. The instant case arose in February 2019 when respondent allegedly left the two-year old child alone in respondent's apartment. On March 25, 2019, a CPS worker went to verify that respondent's home was safe for ZMT and observed unsanitary conditions. Respondent pleaded to the allegation in the amended removal petition filed by the Department of Health and Human Services (DHHS) that the condition of her home fell below community standards and presented a substantial risk of harm to the child. The trial court assumed jurisdiction over the child in April 2019.[1]

Throughout the case, DHHS's position has been that the condition of respondent's home was the result of severe mental health issues that she was not being treated for. At DHHS's request, Randall E. Haugen, Ph.D., performed a psychological evaluation on respondent. Dr. Haugen wrote a report recommending a mental health treatment plan oriented toward teaching respondent to identify what constitutes abusive or neglectful behavior. He opined that until respondent

---

[1] The child was originally placed with the biological father but was later removed from his care and placed with a paternal relative. The father voluntarily released his parental rights to the child.

successfully completed treatment, all her visits with ZMT should be supervised. The trial court ordered respondent to comply with this plan.

By the June 2021 termination hearing, held more than two years after the order of adjudication, respondent had made little progress on the case service plan. According to respondent's caseworkers, she did not consistently attend mental health counseling. Kristin Sausser, who was the caseworker for the majority of the case, testified that respondent missed as many as two counseling sessions per month, and would often call to cancel sessions at the last minute. And the counseling that respondent did participate in did not address her problematic behavior and thought patterns that led to ZMT's removal. Sausser also testified that respondent cancelled over half the parenting-time visits with ZMT that were offered. Respondent would cancel both virtual visits and in-person visits, despite the caseworker's offer to help her with transportation. Even when respondent did visit ZMT, Sausser said that respondent would spend time on her phone or watch ZMT play rather than interact with ZMT and did not respond to admonitions to be more active with the child. Further, Sausser indicated that respondent did not communicate appropriately with ZMT in that she spoke with the child as if he were her peer rather than her child.

On the second day of the termination hearing, respondent testified that she missed parenting-time visits with ZMT because she was struggling with "sleep problems." According to respondent, she had recently been diagnosed with "obstructive limb movement disorder" and another sleep disorder that she could not recall the name of. Explaining why she had not mentioned this earlier, respondent testified that she just recently received from her doctor the results of a sleep study and that it had taken about eight months for her to get into the study.

The trial court found that there was sufficient evidence to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j), and that doing so was in the child's best interests.

## II. ANALYSIS

Respondent argues that the trial court erred by finding that DHHS made reasonable efforts to reunite her with ZMT because DHHS did not account for her sleeping disorder. We disagree.[2]

"Under Michigan's Probate Code, the Department has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2). "As part of these reasonable efforts, the Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id*. at 85-86, citing MCL 712A.18f(3)(d). The

---

[2] We review for clear error a trial court's factual findings regarding whether DHHS made reasonable efforts to reunify a family. See *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016) (quotation marks and citation omitted).

Michigan Supreme Court has held that "efforts at reunification cannot be reasonable under the Probate Code if the Department has failed to modify its standard procedures in ways that are reasonably necessary to accommodate a disability under" the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*. *Id*. at 86.

A public entity cannot be required to provide reasonable accommodations for a disability of which it is unaware. *Id*. at 87. Respondent conceded at the termination hearing that she never told her caseworkers that she was having sleeping issues. And there is nothing in the record to suggest that the caseworkers should have known that respondent was suffering from a condition separate from her mental health issues. Respondent argues that she could not have told the caseworkers about her sleeping issues because she did not learn of her sleeping disorder until the termination hearing, but this argument is unavailing. Even if respondent did not know her official diagnosis until this time, she knew she was having sleeping issues and that these issues were interfering with her parenting visitation, but she did not bring this to DHHS's attention. Further, it is unclear that respondent's sleeping disorder was so limiting as to constitute a disability as defined by the ADA. See 42 USC 12102(1). It is also unclear what accommodations respondent believes should have been made, aside from granting her more time to comply with the case service plan. See *In re Sanborn*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 354916); slip op at 4 ("When challenging the services offered, a respondent must establish he or she would have fared better if other services had been offered."). While respondent maintains that her sleep issues caused her to miss parenting-time visits, she did not testify that these issues affected her ability to participate and benefit from the other services offered to her.

Setting aside the ADA, the record is replete with evidence that DHHS made reasonable efforts to reunify respondent with ZMT. When this case began in March of 2019, DHHS obtained a psychological evaluation report on respondent that outlined the therapeutic goals she needed to meet. To help respondent achieve these goals, DHHS connected respondent with mental health services and gave respondent more than two years to use those services. Further, DHHS enrolled respondent in parenting classes so she could improve her parenting skills, but she did not show sufficient benefit from them. Because transportation was an issue for respondent, DHHS would have one of its employees drive respondent to visits with ZMT, or it would subsidize a Greyhound bus ticket for respondent. Also, to address respondent's unemployment, DHSS connected her with an employment agency, but she failed to maintain consistent employment. "While [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondent[] to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). As such, the record demonstrates DHHS provided relevant services to respondent, but she either did not fully avail herself of the proffered services or failed to meaningfully benefit from them.

Respondent also argues that the trial court erred by finding that statutory grounds to terminate her parental rights were proven by clear and convincing evidence. We again disagree.[3]

---

[3] We review for clear error a trial court's decision that a ground for termination of parental rights exists. *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009) (quotation marks and

MCL 712A.19b(3)(c)(*i*) provides that the trial court may terminate a respondent's parental rights if there is clear and convincing evidence presented that "182 or more days have elapsed since the issuance of an initial dispositional order" and "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age."

Respondent maintains that the trial court should have given her more time to benefit from services considering her newly diagnosed sleep disorder. However, there was ample evidence presented that respondent would not be able to address her mental health, i.e., the underlying issue in this case, in a reasonable time. Sausser testified that respondent failed to stabilize her mental health, despite over two years of intervention, and that she still had not progressed to the point she could have unsupervised visits with ZMT. One of the reasons for this was that respondent failed to consistently attend counseling. She would often call and cancel counseling sessions the day of, and not reschedule for weeks at a time. And, as Sausser explained, respondent's mental health continued to be an issue with respect to her parenting, as there were times when she claimed to be too depressed to have phone or in-person visits with ZMT. Alexis McKendrick, who took over as the caseworker in May 2021, testified on the first day of the termination hearing that respondent had been assigned a new therapist but that they had only met twice and discussed nothing of substance.

In sum, after two years of services, respondent had failed to make meaningful progress on her mental health stability. And respondent's alleged sleep disorder was a separate issue that had no bearing on whether the statutory grounds were met given our conclusion that reasonable reunification efforts were made. For these reasons, we conclude that the trial court did not clearly err by terminating respondent's parental rights under MCL 712A.19b(3)(c)(*i*). Because "[o]nly one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights," *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011), we decline to address whether there was sufficient evidence supporting the other statutory grounds cited by the trial court.[4]

Affirmed.

/s/ Colleen A. O'Brien
/s/ Douglas B. Shapiro
/s/ Mark T. Boonstra

---

citation omitted); MCR 3.997(K). A finding is clearly erroneous if this Court "is left with the definite and firm conviction that a mistake has been made." *Id.* (quotation marks and citations omitted).

[4] Respondent does not challenge the trial court's finding that termination was in ZMT's best interest. Nonetheless, we see no clear error in that ruling.