*In re* FRIED

Docket No. 258432. Submitted March 29, 2005, at Detroit. Decided May 24, 2005, at 9:35 a.m.

The Family Independence Agency (FIA), now the Department of Human Services, petitioned the Ingham Circuit Court, Family Division, to terminate the parental rights of Daniel Fried to his minor child. The respondent brought a motion for compliance with the requirements of the Indian Child Welfare Act (ICWA), 25 USC 1901 *et seq.*, asserting that the child was an "Indian child" as defined in that act. The court, Albert J. Neukom, J., denied the motion. The court subsequently terminated the respondent's parental rights, and the respondent appealed.

The Court of Appeals *held*:

1. The trial court correctly determined that the ICWA did not apply in this case. The respondent submitted documentation that he had been accepted into the Lost Cherokee Nation. That tribe, however, is not a tribe recognized as eligible for services provided to Indians by the United States Secretary of the Interior. As such, it is not an "Indian tribe" as defined in the ICWA, and the minor child cannot qualify by virtue of her potential membership in that tribe as an "Indian child" to whom the act applies.

2. The trial court did not err by finding that the evidence was sufficient to establish that the primary condition leading to adjudication, the respondent's drug addiction, continued to exist at the time of the termination hearing, and by finding that there was no reasonable likelihood that the conditions leading to adjudication would be rectified in a reasonable time considering the child's age. The respondent's failure to successfully address his drug addiction was not attributable to a lack of reasonable efforts by the petitioner. Nor did the record indicate that the case was influenced by a conflict of interest stemming from the foster parent's position in the FIA.

3. The trial court did not err in its finding concerning the child's best interests.

Affirmed.

INDIANS — INDIAN CHILD WELFARE ACT — WORDS AND PHRASES — INDIAN TRIBE —
INDIAN CHILD.

> A tribe that is not recognized as eligible for services provided to
> Indians by the United States Secretary of the Interior is not an
> "Indian tribe" within the meaning of the Indian Child Welfare Act;
> a minor child cannot qualify by virtue of membership or potential
> membership in such an unrecognized tribe as an "Indian child" to
> whom the act applies (25 USC 1903[4] and [8]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*,
Solicitor General, and *Stuart J. Dunnings III,* Prosecut-
ing Attorney, and *Susan L. LeDuc*, Appellate Division
Chief, for the petitioner.

*David L. Zoglio* for the respondent.

Before: KELLY, P.J., and SAWYER and WILDER, JJ.

KELLY, P.J. Respondent appeals as of right the trial
court's order terminating his parental rights to the
minor child under MCL 712A.19b(3)(c)(i). We affirm the
trial court's decision not to apply the Indian Child
Welfare Act (ICWA), 25 USC 1901 *et seq.*, because the
ICWA does not apply to a termination case when the
minor child is claimed to be an Indian child from an
Indian tribe that is not recognized as eligible for ser-
vices provided to Indians by the Secretary of the Inte-
rior. We also affirm the trial court's finding of a statu-
tory ground for termination of respondent's parental
rights and its finding concerning the child's best inter-
ests.

### I. FACTS

This case came to the attention of the Michigan
Family Independence Agency (FIA), now the Depart-
ment of Human Services, in July 2003, when it received
information that the child's parents were injecting

heroin while holding her. The petition also alleged that the mother was advised not to leave the child with respondent, who had a history of substance abuse, yet the child had been left with him. At a pretrial and emergency removal hearing, an FIA worker reported that the mother failed to appear for a drug screen and that respondent was difficult to contact to arrange a drug screen. The trial court declined to remove the child from the mother's care at that time. At a second emergency removal hearing, it was reported that respondent tested positive for opiates and marijuana and that the mother tested positive for opiates. The trial court then removed the child from the mother and placed her in the care of the maternal grandmother.

Following an adjudication at which the mother and respondent entered pleas, the trial court took temporary jurisdiction over the minor child. The trial court ordered both parents to sign confidentiality releases for treatment programs and submit to random drug screens. The trial court also directed psychological evaluations to take place after the parents were clean of drugs.

At a dispositional review hearing, the FIA worker testified that she had received no results for respondent's drug screens and no information that he had followed through with the ordered treatment program. The court again ordered treatment, drug screens, and psychological evaluations. The court also ordered the parents to seek employment. A few weeks later, respondent was put in jail for contempt of court for failing to submit to the required drug screens. Three months later, respondent was again held in contempt for the same reason and placed in jail for twenty days.

In April 2004, at a dispositional review hearing, a foster care worker reported that respondent missed

twelve drug screens and tested positive six times, though he was participating in an intensive outpatient program. The worker also reported that someone died of a heroin overdose in respondent's apartment. The worker further reported that respondent was in methadone treatment, but, at that time, he also tested positive for cocaine and marijuana. At a subsequent hearing, respondent's mother, Paula Reeves, testified that the Lost Cherokee Nation recognized her and respondent. Gene Paul Cloutier, the director of Native American Affairs for the FIA, however, testified that the Lost Cherokee Nation is not recognized by the federal government and, therefore, does not fall within the provisions of the ICWA. Reeves testified that the Lost Cherokee Nation had applied for recognition from the federal government. The trial court ruled that the ICWA did not apply to the Lost Cherokee Nation because it was not "federally recognized."

After a hearing on termination of respondent's parental rights, the trial court found clear and convincing evidence in support of the asserted ground for termination. The trial court further found that it was in the best interests of the child for respondent's parental rights to be terminated.

## II. APPLICATION OF THE INDIAN CHILD WELFARE ACT

Respondent first contends that the trial court erred by failing to apply the ICWA to the termination proceedings. We disagree. Issues involving application of the ICWA present questions of law that we review de novo. *In re SD,* 236 Mich App 240, 243; 599 NW2d 772 (1999).

The ICWA provides:

> In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of,

or termination of parental rights to, an Indian child shall
notify the parent or Indian custodian and the Indian child's
tribe, by registered mail with return receipt requested, of
the pending proceedings and of their right of intervention. If
the identity or location of the parent or Indian custodian and
the tribe cannot be determined, such notice shall be given to
the Secretary[1] in like manner, who shall have fifteen days
after receipt to provide the requisite notice to the parent or
Indian custodian and the tribe. [25 USC 1912(a).]

If the ICWA is applicable, termination of parental rights
may not be ordered "in the absence of a determination,
supported by evidence beyond a reasonable doubt, in-
cluding the testimony of qualified expert witnesses,
that the continued custody of the child by the parent or
Indian custodian is likely to result in serious emotional
or physical damage to the child." 25 USC 1912(f).

Pursuant to the ICWA, 25 USC 1903(4),

"Indian child" means any unmarried person who is under
age eighteen and is either (a) a member of an Indian tribe
or (b) is eligible for membership in an Indian tribe and is
the biological child of a member of an Indian tribe[.]

Further,

"Indian tribe" means any Indian tribe, band, nation, or
other organized group or community of Indians recognized
as eligible for services provided to Indians by the Secretary
because of their status as Indians, including any Alaska
Native village as defined in section 1602(c) of Title 43[.] [25
USC 1903(8).][2]

The ICWA does not apply to proceedings in which the
child is not an "Indian child." *In re NEGP,* 245 Mich

---

[1] Pursuant to 25 USC 1903(11), "Secretary" means the United States
Secretary of the Interior.

[2] Those tribal entities recognized and eligible for funding and services
from the Bureau of Indian Affairs are listed in a notice found in 68 Fed
Reg 68180 (December 5, 2003).

126, 133; 626 NW2d 921 (2001). While it is for the tribe to determine whether a child is an "Indian child," it is for the court to determine whether the tribe is an "Indian tribe." *Id.* at 133-134.

Respondent submitted documentation indicating that he has been accepted into the Lost Cherokee Nation. However, in a hearing on respondent's motion to comply with the ICWA, the director of Native American Affairs for the FIA testified that the Lost Cherokee Nation is not recognized by the federal government and, therefore, does not fall within the provisions of the ICWA. We hold that because the tribe to which respondent belongs is not a tribe recognized as eligible for services provided to Indians by the Secretary of the Interior, it is not an "Indian tribe" within the meaning of the ICWA. 25 USC 1903(8) and (11). The minor child, therefore, cannot qualify as an "Indian child" by virtue of her potential membership in that tribe. 25 USC 1903 (4) and (8). Further, the Cherokee tribes that do have the required recognition have indicated that the minor child does not have ancestry in those tribes. Under these circumstances, the trial court correctly ruled that the ICWA did not apply to these proceedings.

### III. TERMINATION OF PARENTAL RIGHTS

Respondent also contends on appeal that the trial court erred by terminating respondent's parental rights when petitioner failed to provide adequate services directed toward reunification. We disagree.

### A. STANDARD OF REVIEW

In order to terminate parental rights, the court must find that at least one of the statutory grounds set forth in MCL 712A.19b has been met by clear and convincing

evidence. *In re Terry,* 240 Mich App 14, 21-22; 610 NW2d 563 (2000). Once a ground for termination is established, the court must order termination of parental rights unless the court finds that termination is clearly not in the child's best interest. *In re Trejo,* 462 Mich 341, 365; 612 NW2d 407 (2000). This Court reviews "for clear error both the court's decision that a ground for termination has been proven by clear and convincing evidence and, where appropriate, the court's decision regarding the child's best interest." *Id.* at 356-357. "An appellate court should not reverse the findings of a trial court in such a case unless its findings are clearly erroneous." *In re Miller,* 433 Mich 331, 337; 445 NW2d 161 (1989). When reviewing the trial court's findings of fact, this Court accords deference to the special opportunity of the trial court to judge the credibility of the witnesses. *Id.*

## B. STATUTORY GROUNDS FOR TERMINATION

Although respondent has not expressly challenged the sufficiency of the evidence for termination of his parental rights, his contention that reasonable services were not offered ultimately relates to the issue of sufficiency. See *In re Newman,* 189 Mich App 61, 65-67; 472 NW2d 38 (1991). After reviewing the record, we conclude that the evidence was sufficient to establish that the primary condition leading to adjudication, respondent's drug addiction, continued to exist at the time of the termination hearing. Throughout this matter, respondent tested positive in drug screens and failed to show up for numerous drug screens. He also failed to complete an intensive outpatient treatment program with the National Council on Alcoholism, and left an inpatient program against medical advice after one week. While respondent had begun to address his

addiction by the time of the termination hearing, the evidence established that this process would take eighteen to twenty-four months and that respondent was still in the early stages of dealing with denial of his addiction. Assuming that respondent successfully completed substance abuse treatment, the evidence established that he would then need to address underlying personality issues. At the time of hearing, psychological evidence indicated that his prognosis remained guarded. Given that the earliest possible time in which respondent could be in position to care for the child is at least two years, the trial court did not clearly err by finding no reasonable likelihood that the conditions leading to adjudication would be rectified in a reasonable time considering the child's age, fourteen months at the time of the hearing.

We reject respondent's contention that this failure to successfully address his drug addiction is attributable to deficient efforts by petitioner. In general, when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan. MCL 712A.18f(1), (2), and (4). In this case, petitioner provided referrals for psychological and substance abuse evaluations for respondent. The foster care worker set up drug screens and provided supervised visitation with the child. As a result of the substance abuse evaluation, respondent was referred to substance abuse treatment, which he did not complete. The worker did not refer respondent to counseling because his psychological evaluation indicated that counseling would not be productive until his drug addiction was addressed.

Under these circumstances, the trial court did not clearly err by finding that reasonable efforts were made

to preserve and reunify the family. Respondent emphasizes that he engaged in numerous services without assistance from the foster care worker. Indeed, respondent exhibited considerable initiative in locating and entering treatment, but unfortunately never successfully completed treatment. The fact that respondent sought treatment independently in no way compels the conclusion that petitioner's efforts toward reunification were not reasonable, and, more to the point, does not suggest that respondent would have fared better if the worker had offered those additional services to him. Thus, no relief is warranted.

We also reject respondent's claim that this case was influenced by a conflict of interest stemming from the foster parent's position in the FIA. There is no evidence supporting this theory. The foster parent had previously been a foster care worker and foster care supervisor in Ingham County, but was employed in the central office since January 2003. In order to avoid any appearance of impropriety, this matter was assigned to a foster care worker from Jackson County. The foster care worker testified that she treated the foster parent no differently than she would any foster parent, and the record supplies no evidence to the contrary.

### C. CHILD'S BEST INTERESTS

Finally, the trial court did not clearly err by finding that termination of respondent's parental rights was in the best interests of the child. MCL 712A.19b(5) requires termination if a statutory ground exists, unless the court finds that termination is clearly not in the child's best interests. *In re Trejo, supra* at 364-365. Here, the evidence demonstrated that respondent interacted appropriately with the minor child, who, in turn, responded affectionately to him. However, respondent

has not lived with the minor child since she was an infant: the child was fourteen months old at the time of the hearing. The evidence also established that the child is flourishing in the care of her maternal grandmother. Further, respondent will need two to three years before he could possibly be in a position to care for the minor child. On the basis of this evidence, the trial court found that termination was in the child's best interests. This finding, while not required by MCL 712A.19b(5), "is permissible if the evidence justifies it," *In re Gazella*, 264 Mich App 668, 677-678; 692 NW2d 708 (2005), and, in fact, goes "beyond the statutory best interest inquiry," *In re Trejo, supra* at 357. We conclude that the trial court did not clearly err in finding that termination was in the child's best interests because the evidence did not establish that termination was clearly not in the child's best interests.[3]

Affirmed.

---

[3] Respondent further asserts a denial of due process in the trial court's best interests determination. However, the best interests determination does not implicate due process rights, because once the petitioner has presented clear and convincing evidence that a statutory ground for termination is established, the parent's liberty interest no longer includes the right to care for the child. *In re Trejo, supra* at 355.