*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BRC, Minor.

UNPUBLISHED
January 16, 2020

No. 350009
Lenawee Circuit Court
Family Division
LC No. 14-000231-NA

Before: RIORDAN, P.J., and SAWYER and JANSEN, JJ.

PER CURIAM.

Respondent-mother appeals as of right the order terminating her parental rights to her minor child, BRC, under MCL 712A.19b(3)(g) (parent failed to provide proper care or custody and no reasonable expectation parent will provide proper care or custody within a reasonable time), MCL 712A.19b(3)(*i*) (parental rights to one or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions that led to the termination of parental rights), and MCL 712A.19b(3)(j) (there is a reasonable likelihood, on the basis of the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent). We affirm.

## I. FACTS

Petitioner, the Department of Health and Human Services (DHHS), sought termination of respondent's parental rights to BRC shortly after BRC was born due to respondent's inability to care for BRC as a result of respondent's cognitive issues which were manifested with respect to respondent's older child MR and which led to termination of respondent's parental rights to MR in 2015. During the 2015 proceedings, respondent had undergone a psychological evaluation the results of which demonstrated that she had a "Full Scale IQ of 68, Extremely Low" and that "[t]hrough no fault of her own, [respondent] is not likely to be able to safely and effectively care for a young child, particularly an infant who is dependent on the parent for survival." In the instant matter, the trial court found that jurisdictional grounds existed, and after a number of hearings, found that termination was in BRC's best interests. This appeal followed.

## II. JURISDICTION

Respondent first argues that the trial court erroneously found that it had jurisdiction over BRC despite declining to terminate respondent's parental rights at the adjudicative hearing. We disagree.

"[T]he adjudicative phase is only the first step in child protective proceedings," and there is no requirement to enter an order terminating parental rights at the adjudication hearing. *In re Sanders*, 495 Mich at 406. By not terminating respondent's parental rights and retaining jurisdiction over BRC, the trial court allowed respondent additional time to receive and benefit from services. Therefore, the trial court did not err when it declined to terminate respondent's parental rights, but retained jurisdiction and directed the DHHS to provide reasonable effort to reunify respondent and BRC.

Respondent also argues that the trial court failed to articulate a sufficient explanation for retaining jurisdiction over BRC. However, the order entered by the trial court after the adjudication provides that statutory grounds existed to establish jurisdiction under MCL 712A.19b(3)(g) because there was risk of harm if BR was returned to respondent. The trial court made this determination on the basis of respondent's prior psychological evaluation, respondent's testimony, and the previous termination of respondent's parental rights. Therefore, the trial court provided a sufficient explanation for retaining jurisdiction over BRC.

## III. ADA COMPLIANCE

Respondent next argues that the trial court erred in determining that the parenting services offered by the DHHS complied with the requirements of the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*. We disagree.

This Court reviews for clear error a trial court's decision regarding whether "reasonable efforts were made to preserve and reunify the family." *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). A trial court clearly errs when "we are definitely and firmly convinced that it made a mistake." *In re White*, 303 Mich App at 709-710.

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 USC 12132. In *In re Hicks*, 315 Mich App 251, 282; 890 NW2d 696 (2016), aff'd in part, vacated in part sub nom *In re Hicks/Brown*, 500 Mich 79; 893 NW2d 637 (2017), we held that mentally disabled parents should be given services that are modified or adjusted "to allow the parent an opportunity to benefit equally to a nondisabled parent." In *In re Hicks/Brown*, 500 Mich at 90, our Supreme Court held that when a parent is mentally disabled, efforts at reunification are "reasonable under the Probate Code [if] the Department modifies its services as reasonably necessary to accommodate a parent's disability." Giving a mentally disabled parent additional time to benefit from services is one way that the DHHS can modify its services to accommodate a mentally disabled parent. See *In re Hicks/Brown*, 500 Mich at 90; *In re Hicks*, 315 Mich App at 281-283. Consistent with modifications to the services offered to a disabled parent's service plan, a mentally disabled parent should be given additional time to benefit from services if such a modification to his or her service plan would be reasonably necessary to accommodate a disability. See *In re Hicks/Brown*, 500 Mich at 90; *In re Hicks*, 315 Mich App at 281-283. A

respondent also has a duty to "participate [and] demonstrate that they sufficiently benefited from the services provided." *In re Frey*, 297 Mich App at 248.

Respondent was provided with numerous services aimed at reunifying her with BRC. After BRC was placed in foster care, respondent was provided with foster care case management, parent aide services, supervised visitations, parenting classes, Family Team Meetings, a psychological evaluation, one on one parenting instruction, a mental health assessment, and individualized counseling. These services were designed to help respondent despite her disability. At trial, the doctor who performed respondent's psychological evaluation ("Dr. M") testified that the services provided to respondent were appropriate and reasonably accommodated her disability. A DHHS foster care worker testified that she had ensured that the services provided met ADA requirements. Therefore, the trial court did not err in determining that the parenting services offered by the DHHS complied with the requirements of the ADA.

One month before respondent's parental rights were terminated, respondent started receiving "one on one" parenting counseling, but her parental rights were terminated before she could complete this service. Respondent argues that she should have been given additional time to benefit from this service. Although respondent benefited from this service, it is unlikely that the "one on one" parenting instructions would have corrected the deficiencies in respondent's ability to parent. Specifically, Dr. M concluded that "[e]ven with the services provided . . . it is not realistic to expect a substantial improvement in [respondent's] functional capacity and ability to . . . independently manage the responsibilities and wide-ranging demand[s], tasks, and stresses of childcare and parenting." Although respondent is able to learn new parenting concepts, Dr. M opined that respondent's learning disability prevents her from adopting and implementing the skills she has learned in novel situations. Thus, the trial court did not err when it terminated respondent's parental rights before affording respondent an opportunity to complete the "one on one" parenting instruction.

Respondent also argues that the trial court erred when it considered the facts underlying the earlier termination of respondent's parental rights. Under the doctrine of anticipatory neglect, "[h]ow a parent treats one child is certainly probative of how that parent may treat other children." *In re LaFrance Minors*, 306 Mich App 713, 730; 858 NW2d 143 (2014) (quotation marks and citation omitted). Here, the trial court did take into consideration the termination of respondent's parental rights to her first child. However, the trial court articulated numerous facts that were specific to only to the current case to support termination of respondent's parental rights to BRC. The trial court found that the doctrine of anticipatory neglect supported terminating respondent's parental rights to BRC, and that statutory grounds under MCL 712A.19b(3)(*i*) existed because "we do have the parental rights to a sibling terminated on the same grounds, however, the law certainly asks us to look at each child and each situation differently." The court also found statutory grounds to support termination of respondent's parental rights also existed under MCL 712A.19b(3)(g) and (j). The trial court continued to articulate a factual basis for the termination of respondent's parental rights to BR. Specifically, the trial court considered the testimony of Dr. M that respondent is unable to apply new concepts that she has learned in different situations. The trial court found that Dr. M's evaluation was accurate because "although [respondent] has been working on parenting skills for a number of years, it seems as though mastery of those skills is limited at best. . . ." The trial court also found that the observations made by respondent's parent aide confirmed Dr. M's assessment because

respondent would need to be prompted to check and change BRC's diaper. Lastly, the trial court was concerned about an incident with respondent providing a bottle of overheated formula to BRC. On the basis of these findings, the trial court did not err when it also considered the termination of respondent's rights to her first child.

## IV. CONCLUSION

Because the trial court did not commit error requiring reversal, we affirm.

/s/ Michael J. Riordan
/s/ David H. Sawyer
/s/ Kathleen Jansen