*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* FEND, Minors.

UNPUBLISHED
July 14, 2022

No. 359750
Saginaw Circuit Court
Family Division
LC No. 21-036233-NA

Before: GLEICHER, C.J., and GADOLA and YATES, JJ.

PER CURIAM.

The trial court terminated respondent-mother's parental rights to JF and MF at the initial disposition based on respondent withholding food and water from JF, leading to kidney failure and an extended hospitalization. The record evidence supports the court's decision and we affirm.

## I. BACKGROUND

In January 2021, the Department of Health and Human Services (DHHS) filed a petition to remove the minor children from respondent's care and terminate respondent's parental rights at the initial dispositional hearing. Evidence was presented that six-year-old JF was admitted to the hospital in December 2020. He was severely malnourished and dehydrated, had venous thrombosis (blockage of a vein by a blood clot) in his brain, was in acute kidney failure, and had an elevated sodium level. JF was near death and medical professionals opined he had been deprived of food and water for a significant period, causing this severe condition. JF remained hospitalized for an extended period. JF told investigators that respondent would lock him in his room when he was grounded and restrict his access to food and water.

Respondent claimed that JF had refused to eat for two weeks leading up to his hospitalization. Respondent inconsistently described that she had given JF two or four PediaSure drinks each day; however, the doctors explained that JF's condition would not have been so severe if this were true. Moreover, despite respondent's claims that JF had been spitting out his food, hospital staff observed that JF ate voraciously. Respondent admitted that she had caught JF drinking his own urine, but she connected this with JF's behavioral issues. A medical expert, on the other hand, testified that a person only drinks his or her urine out of desperation due to severe dehydration.

-1-

Respondent further claimed that she only locked JF in his room when he had violent outbursts. Respondent asserted that JF had been diagnosed with autism and was prone to tantrums. Hospital staff noted no such behavior. Respondent presented a video recording of JF crying in the car after leaving a party. JF's behavior did worsen in that video, but only after respondent made harassing and cruel comments to him and respondent's girlfriend laughed at him. The children's maternal aunt took custody of them during these proceedings and she observed no violent behavior. And it turned out that JF did not suffer an autism spectrum disorder.

The trial court determined that the DHHS was not required to provide reunification services under MCL 712A.19a(2) because the evidence established aggravated circumstances under MCL 722.638(1)(a). Those same aggravated circumstances supported termination of respondent's parental rights under MCL 712A.19b(3)(k)(*iii*), (k)(*iv*), and (k)(*v*) (abuse of the child or the child's sibling). The court also found termination supported under MCL 712A.19b(3)(b)(*i*) and (*ii*), (g), and (j). Given the aggravated circumstances, the court found termination was in the children's best interests despite that they had been placed with a relative.[1]

## II. ANALYSIS

Respondent contends that aggravated circumstances did not exist and therefore the DHHS was required to provide reunification services and the court could not support termination under MCL 712A.19b(3)(k).

"Reasonable efforts to reunify the child and family must be made in all cases except those involving aggravated circumstances. Absent aggravating circumstances, the DHHS has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Simonetta*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 357909), p 3. We review for clear error the trial court's factual determination that aggravated circumstances existed in this case. See *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). We review de novo the court's interpretation and application of the underlying statutes. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010).

Pursuant to MCL 712A.19b(3), a circuit court "may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence" that at least one statutory ground has been proven by the DHHS. MCR 3.977(A)(3); *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). We also review for clear error a circuit court's factual finding that a statutory termination ground has been established. *In re Rood*, 483 Mich 73, 90-91; 763 NW2d 587 (2009).

MCL 712A.19a(2) requires that reasonable efforts to reunify the child and family be made in all child protective proceedings, absent certain exceptions. Relevant to this appeal, MCL 712A.19a(2)(a) provides that reunification efforts need not be made if "[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in" MCL 722.638(1) or (2). And MCL 722.638(1)(a) provides that aggravated circumstances exist

---

[1] The children's father voluntarily relinquished his parental rights.

when a parent "has abused the child or a sibling of the child and the abuse included 1 or more of the following[.]"  This subsection lists six categories of "abuse," including:

> (*iii*) Battering, torture, or other severe physical abuse.[2]
>
> (*iv*) Loss or serious impairment of an organ or limb.
>
> (*v*) Life threatening injury. . . .  [*Id*.]

Similarly, MCL 712A.19b(3)(k) permits the termination of parental rights as follows:

> The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent:
>
> \* \* \*
>
> (*iii*) Battering, torture, or other severe physical abuse.
>
> (*iv*) Loss or serious impairment of an organ or limb.
>
> (*v*) Life-threatening injury.

Respondent focuses her challenge on the trial court's definition of "torture" in finding both an aggravated circumstance to avoid the provision of services and supporting termination under factor (k).  The statute does not define the term "torture" and the trial court relied on a dictionary definition.  We need not consider the propriety of that definition, however, as the DHHS presented significant evidence of "severe physical abuse" and "serious impairment of an organ."

Neither MCL 722.638 nor MCL 712A.19b define "severe physical abuse."  However, "abuse" is defined elsewhere in the child protective statutes.  MCL 712A.13a(20) expressly applies to MCL 712A.19a and MCL 712A.19b.  MCL 712A.13a(1).  Subsection 13a(20) provides that "abuse" includes "[h]arm or threatened harm by a person to a juvenile's health or welfare that occurs through nonaccidental physical or mental injury."  By describing the level of abuse necessary to avoid the provision of services to "severe physical abuse," the Legislature expressed its intent to limit this exception to the most egregious of cases.  Indeed, in the criminal code, the "serious physical harm" necessary to support certain counts of child abuse is defined as "any physical injury to a child that seriously impairs the child's health or physical well-being, including, but not limited to, brain damage, a skull or bone fracture, subdural hemorrhage or hematoma, dislocation, sprain, internal injury, poisoning, burn or scald, or severe cut."  MCL 750.136b(1)(f).

As a result of respondent denying her young child food and water, JF was malnourished and severely dehydrated.  The dehydration caused blood clots to form in JF's brain and led to acute

---

[2] This statute has been amended by 2022 PA 66, effective November 1, 2022, to replace "severe physical abuse" with "serious physical harm."

kidney failure.  Medical experts testified that had JF's treatment been delayed any further, he would have died.  These were severe physical injuries and JF suffered serious impairment of an organ[3] caused by respondent's denial of food and water.  The denial of these basic needs to the point it caused injury was abuse.

Respondent contends, however, that the DHHS did not establish that her acts were intentional or "nonaccidental."  Rather, respondent argues that JF had behavior and health issues that caused him to reject food and water for two weeks.  "[B]ecause it can be difficult to prove [an individual's] state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice" and intent "can be inferred from all the evidence presented."  *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

Respondent's credibility was undermined during these proceedings.  Respondent's grandfather testified that he celebrated Thanksgiving 2020 at respondent's home.  Respondent called her grandfather ahead of the celebration and indicated that JF would remain in his bedroom during the entire visit as a punishment.  Respondent then did not provide JF with meals.  The grandfather testified that respondent claimed JF could not eat because he had been throwing up.  In March 2021, respondent called her grandfather and asked him to testify that JF ate dinner with them on Thanksgiving.  The grandfather refused to lie on respondent's behalf.  Respondent also provided inconsistent stories to the workers throughout this case.  At times, respondent insisted that water was always available to JF; at other times, respondent asserted that she denied JF water to ensure that he ate.  Respondent repeatedly changed her story about providing PediaSure to JF.  Further, Pediatric Psychologist Dr. Crystal Cederna-Meko testified that respondent reported that she restricted JF's access to foods if he had recently eaten and even as punishment.  The court did not believe respondent's excuses and we may not interfere with that credibility determination.  See *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

As respondent committed severe physical abuse against JF and caused the serious impairment of an organ, the DHHS was not required to provide reunification services in this case.  The court could also rely on the evidence of severe physical abuse and the serious impairment of an organ in supporting termination under several subsections of MCL 712A.19b(3)(k).

We affirm.


/s/ Elizabeth L. Gleicher
/s/ Michael F. Gadola
/s/ Christopher P. Yates

---

[3] Contrary to respondent's contention, nothing supports that the serious impairment of the child's organ must be permanent.