*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. A. UREEL, Minor.

UNPUBLISHED
October 27, 2022

No. 360662
St Clair Circuit Court
Family Division
LC No. 21-000178-NA

Before: RONAYNE KRAUSE, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order taking temporary jurisdiction over his minor child, JAU, pursuant to MCL 712A.2(b)(1) and (2). We affirm.

## I. BACKGROUND

JAU came into care on October 22, 2021, due to improper supervision and neglect by his parents[1]. Mother and father have a CPS history, including one occurrence in February of 2019 when JAU was removed from their care due to mother and father's abuse of illicit substances such as methamphetamine, housing instability, untreated mental health issues, and mother's incarceration. On October 13, 2021, CPS launched another investigation following a complaint that an unknown minor was being exposed to substance abuse and domestic violence while on John Fik's property, a location known for methamphetamine sales. When CPS investigator, Jose Garcia, presented at Mr. Fik's residence, a single-family home located on a farm, Mr. Fik identified the unknown minor as JAU. Mr. Garcia reported that while he was on Mr. Fik's property, several unknown individuals arrived and appeared to be under the influence. Mr. Garcia performed a wellness check at JAU's listed address in Port Huron and found mother and JAU living in the home with no electricity or running water and that JAU, who was almost six years old, was not enrolled in school. Mother notified Mr. Garcia that father had been incarcerated earlier that day.[2]

---

[1] Mother's parental rights are not at issue in this appeal, as she did not challenge the trial court's order to take temporary jurisdiction of JAU.

[2] On October 13, 2021, father was sentenced to jail for failure to appear and driving on a suspended license.

Mr. Garcia subsequently met with father at the St. Clair county jail to discuss the allegations in DHHS' upcoming petition. At this meeting, father admitted that before he was incarcerated, he resided with mother and JAU at the Port Huron home and was aware that mother had relapsed on methamphetamine. Father also indicated to Mr. Garcia that he planned to move with JAU to Florida to live with his fiancé, Deanna Wade. JAU was subsequently removed from mother and father's care and placed with a foster family.

At the preliminary hearing, father denied the allegations in the petition, testifying that he had not used illicit substances since February of 2019 and that before he was incarcerated, he and JAU lived in a motor home on Mr. Fik's property and not at the Port Huron address. By the time of the bench trial, father was released from jail. Father testified at trial that before he was incarcerated, he was only suspicious of, but not certain about, mother's relapse. Despite father's previous claims regarding JAU's housing before father was incarcerated—first claiming to Mr. Garcia that he lived at the Port Huron home and later testifying at the preliminary hearing that he lived in a motor home on Mr. Fik's property—father also testified at the bench trial that he and JAU were residing with an individual named Ken Peltier. Father explained that his time spent on Mr. Fik's property was limited to fixing vehicles for resale or fixing a camper he intended on using to drive to Florida with JAU. Father denied any illegal activity or drug use on Mr. Fik's property. Father further testified that he arranged for Ms. Wade to take guardianship over JAU in the event of his incarceration, but that mother would not allow it when the time came[3].

The trial court ultimately found by a preponderance of the evidence that a sufficient basis to take temporary jurisdiction of JAU existed pursuant to MCL 712A.2(b)(1) and (2). The court found JAU was in an environment by reason of neglect and criminality, as father was aware of mother's substance abuse and the unfit living conditions of the Port Huron home, yet made no suitable arrangements to remove JAU from mother's care before he was incarcerated. Additionally, at the time the petition was filed, father was unemployed and unable to pay for the utilities, leaving JAU in a house without running water or electricity. The court noted the inconsistencies in father's testimony regarding where he and JAU were living just before father's incarceration. The court also found that JAU was without proper custody or guardianship and that JAU was subject to a substantial risk of harm to his mental well-being.

## II. ANALYSIS

Father argues that the trial court erred in finding by a preponderance of the evidence a statutory ground for taking temporary jurisdiction of JAU.

This Court reviews the trial court's factual findings and ultimate decision to exercise jurisdiction for clear error. *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). We defer to the trial court's special opportunity to judge the credibility of the witnesses. *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005). "A finding is clearly erroneous if the reviewing court

---

[3] Regardless, the record indicates that Deanna Wade would have been excluded from caring for JAU, considering Mr. Garcia's testimony that JAU was previously removed from Ms. Wade's care when he was placed with her during the foster care case in February of 2019.

is left with a definite and firm conviction that a mistake has been made." *In re LaFrance Minors*, 306 Mich App 713, 723; 858 NW2d 143 (2014).

Father challenges the trial court's decision to exercise jurisdiction over JAU by citing solely to MCL 712A.18f(4), which details what a court must consider before entering an order of disposition:

> Before the court enters an order of disposition, the court shall consider the case service plan; any written or oral information offered concerning the child from the child's parent, guardian, custodian, foster parent, child caring institution, relative with whom the child is placed, lawyer-guardian ad litem, attorney, or guardian ad litem; and any other evidence offered, including the appropriateness of parenting time, which information or evidence bears on the disposition. The order of disposition shall state whether reasonable efforts have been made to prevent the child's removal from his or her home or to rectify the conditions that caused the child's removal from his or her home. The court may order compliance with all or any part of the case service plan as the court considers necessary.

"In practice, MCL 712A.18f(4) describes the process by which a family court can enter a dispositional order that provides a child with appropriate care *after* the family court has determined that the child comes within its jurisdiction." *In re AMB*, 248 Mich App 144, 176; 640 NW2d 262 (2001). MCL 712A.18f(4) also requires the trial court to examine the case service plan and state whether reasonable efforts were made to prevent the child's removal from his or her home before entering an order of disposition. That being said, at no point does MCL 712A.18f(4) come into the trial court's consideration when assessing whether to exercise jurisdiction.[4]

A court may exercise jurisdiction when "the child comes within the statutory requirements of MCL 712A.2." *In re Kellogg*, 331 Mich App 249, 253; 952 NW2d 544 (2020) (quotation marks and citation omitted). The trial court acquired jurisdiction over JAU pursuant to MCL 712A.2(b)(1) and (2), which provide that a trial court has jurisdiction over a child:

> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship.

* * *

---

[4] Although MCL 712A.18f(4) has nothing to do with the trial court's assessment of jurisdiction, the record shows that the trial court nevertheless complied with the statute requirements. At the preliminary hearing, the trial court relied on Mr. Garcia's statement of services offered to father and found that reasonable efforts had been made to prevent removal. Moreover, the order of disposition itself expressed the reasonable efforts that had been made.

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.

"The court may authorize the filing of the petition upon a showing of probable cause, unless waived, that one or more of the allegations in the petition are true and fall within MCL 712A.2(b)." MCR 3.965(B)(12). See also *In re Ferranti*, 504 Mich 1, 15; 934 NW2d 610 (2019).

Upon review of the record, established at the March 2, 2022 evidentiary hearing, we hold that the trial court did not err in finding by a preponderance of the evidence that the grounds for acquiring jurisdiction were established pursuant to MCL 712A.2(b)(1) and (2). The evidence supported a finding that as a result of father's actions and omissions, JAU was in an environment by reason of neglect and criminality. Specifically, the record shows that even before father's incarceration, father neglected and failed to properly care for JAU. Although father provided inconsistent statements regarding JAU's housing before father's incarceration, the trial court found that both the Port Huron home and the motor home on Mr. Fik's property were unsuitable for JAU. The evidence showed that the Port Huron home had no running water or electricity, and mother, who resided with JAU, had relapsed on methamphetamine. Evidence also showed that even before father was incarcerated, he was unemployed and unable to pay for the utilities.

Testimony also supported the trial court's finding that while the motor home itself may have been suitable, its location on Mr. Fik's property was not safe for a child as the property was known for methamphetamine sales. The undisputed fact that father was incarcerated at the time of the preliminary hearing supported the court's finding that JAU was without proper custody or guardianship, thereby leaving JAU in an unfit home without having made any suitable arrangements to remove him from the home. In light of this evidence, we are not left with a definite and firm conviction that the trial court erred by exercising jurisdiction over JAU.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Kathleen Jansen
/s/ Christopher M. Murray