*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* HALL, Minor.

UNPUBLISHED
April 13, 2023

No. 363223
Berrien Circuit Court
Family Division
LC No. 2020-000073-NA

Before: SHAPIRO, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to the minor child, KH, pursuant to MCL 712A.19b(3)(c)(*i*) (the conditions that led to adjudication continue to exist), and MCL 712A.19b(3)(j) (likelihood of harm to the child if returned to the parent).[1] Respondent challenges only the trial court's finding that reasonable efforts were made to reunify the family. For the reasons stated in this opinion, we affirm.

## I. BACKGROUND

In October 2020, the Department of Health and Human Services (DHHS) petitioned the trial court to remove KH from respondent's care. The petition alleged that on July 30, 2020, respondent was pulled over and "meth and needles" were found in the vehicle next to the child. It was also observed that KH had "rotten black teeth." Respondent was arrested and the child was released to respondent's boyfriend and then later placed with the boyfriend's mother pursuant to a safety plan. Respondent admitted in an interview the day after removal that she had a history of methamphetamine use and claimed to have been sober for seven years before recently relapsing. She was unemployed and had been living in a motel for about a year. Both respondent and her boyfriend tested positive for methamphetamine. Respondent engaged in some substance abuse services but on September 25, 2020, she again tested positive for methamphetamine, despite her denial of continued methamphetamine use.

---

[1] The trial court also terminated the parental rights of the putative father, but he is not a party to this appeal.

The petition was filed on October 5, 2020, after respondent failed to appear for two drug screens. The petition was authorized after respondent waived the probable cause determination, and the trial court placed the child with DHHS. In November 2020, the trial court assumed jurisdiction over the child after respondent pleaded no contest to the petition's allegations. The hearing then proceeded to the dispositional phase, and respondent was ordered to comply with the case service plan, which included random drug screens and outpatient substance abuse counseling. Respondent partially complied with the case service plan by obtaining employment and appropriate housing and participating in her weekly parenting time visits. However, her drug screens continued to test positive for methamphetamine.

At the second review hearing in June 2021, the family court referee agreed with the lawyer-guardian ad litem that respondent needed inpatient treatment. At the permanency planning hearing in August 2021, the caseworker reported that respondent had not participated in an inpatient treatment program despite separate referrals from the caseworker and respondent's counselor. The referee ordered an abbreviated 60-day review period to allow respondent the opportunity to enter an inpatient program. When respondent had yet to do so by the next review hearing in October 2021, the trial court ordered DHHS to initiate proceedings to terminate respondent's parental rights. The court also suspended respondent's parenting time after hearing testimony from KH's therapist about the emotional distress and physical manifestations of that distress that KH was experiencing as a result of the parenting time visits and her concerns about being returned to respondent's care.

At the next review hearing in January 2022, respondent testified that she entered a rehabilitation facility on October 28, 2022, but stayed for only three hours. Her reason for leaving was that she knew her roommate at the facility "from [a] drug type thing" and "it just wouldn't have been a good thing." Respondent had obtained two weeks off from work to enter inpatient treatment, and she chose to use that time to "detox" herself at her home. She claimed that she was "clean" from methamphetamine after this self-imposed detoxification period. However, she tested positive for methamphetamine on November 30, 2022. A supplemental petition to terminate respondent's parental rights was filed shortly after this review hearing.

The termination hearing began in April 2022. Caseworker Shaniqua Smith testified that respondent had not addressed her substance abuse issue. Respondent's last completed drug screen on March 22, 2022, tested positive for methamphetamine. Smith testified that respondent was referred to inpatient and outpatient substance abuse services, but she did not complete or actively participate in either. The termination hearing continued in May 2022. Respondent testified that she no longer used methamphetamine and that, as of two months ago, she was attending NA meetings and had obtained a sponsor. She had not taken a drug screen since March 22, 2022. She testified that her 8 a.m. to 4:30 p.m. work schedule prevented her from taking drug screens and that she had informed Smith of this issue. Smith was then recalled as witness and testified that respondent declined Smith's offers to administer drug screens to respondent after work hours.

In June 2022, the referee determined that there was clear and convincing evidence to terminate respondent's parental rights. The referee found that respondent's positive tests for methamphetamine in November 2021 and March 2022 contradicted her testimony that she no longer used the drug. The court also determined that termination was in KH's best interests, noting that the child was doing "amazingly well" in foster care and had expressed her wish to be adopted

and that the foster-care parents were able and willing to adopt KH. The trial court adopted the referee's recommendation and entered an order terminating respondent's parental rights.

## II. ANALYSIS

Respondent argues that DHHS did not make reasonable efforts to reunify the family. We disagree.[2]

"Absent aggravating circumstances, the DHHS has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Simonetta*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357909); slip op at 3 (quotation marks and citation omitted). "As part of these reasonable efforts, [DHHS] must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017). "[T]here exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). "This means a respondent-parent must both participate in services and demonstrate that they sufficiently benefited from the services provided." *In re Atchley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 358502, 358503); slip op at 3.

Respondent's primary contention is that inadequate efforts were made to place her an inpatient treatment program. The initial case service plan did not contemplate inpatient treatment, but instead provided for drug screens and substance abuse counseling. It was determined, however, at the June 2021 review hearing that inpatient treatment was necessary in this case. The caseworker then made efforts to refer respondent to inpatient treatment programs and so did respondent's counselor. As of the August 2021 permanency planning hearing, respondent had not yet entered an inpatient treatment program, and an abbreviated 60-day review period was ordered to give her more time to do so. Respondent eventually entered inpatient treatment at Sacred Heart on October 28, 2021, but she stayed for only three hours, claiming that she knew her roommate at the facility from a "drug type thing" and that this would have been problematic. Respondent testified that instead of inpatient treatment she "detoxed" herself at home for two weeks and that she has not used methamphetamine since, but she tested positive for methamphetamine on November 30, 2021, and March 22, 2022. While there were negative tests for methamphetamine over this time, there were also many missed drug screens.

Respondent fails to explain what additional efforts DHHS should have made or how it would have led to a different result. "When challenging the services offered, a respondent must establish he or she would have fared better if other services had been offered." *In re Sanborn*, 337 Mich App 252, 264; 976 NW2d 44 (2021). Respondent's stated reason for not entering an inpatient treatment program sooner was that she did not want to lose her employment. But a caseworker

---

[2] We review for clear error a trial court's finding that DHHS made reasonable efforts to reunify the family. See *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). A finding is clearly erroneous if this Court "is left with the definite and firm conviction that a mistake has been made." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009) (quotation marks and citations omitted).

testified that she would have advocated that respondent be afforded additional time if that occurred and that she told respondent this. In any event, respondent was able to obtain two weeks off from work and she nonetheless failed to meaningfully participate in inpatient treatment. Given this record, respondent cannot show that she would have benefitted from additional efforts by DHHS to place her in an inpatient treatment program.

Respondent also argues that DHHS did no more in this case than refer her to services. The record does not support this contention. Reasonable efforts include agency referrals for appropriate services and active efforts to engage the respondent in the services. See *In re JL*, 483 Mich 300, 322 n 15; 770 NW2d 853 (2009). Smith, who took over the case in January 2022, testified that there were several scheduled meetings with respondent to address the case service plan that respondent did not attend. Respondent also declined Smith's offers to administer drug screens to respondent after work hours. Again, respondent does not explain what additional efforts DHHS should have made or how they would have benefitted her.

In sum, the primary issue in this case was respondent's methamphetamine addiction. Respondent argues that additional efforts should have been made to place her in an inpatient treatment program, but she was afforded an opportunity to complete that treatment before a supplemental petition was filed and she stayed at the treatment facility for only three hours. Accordingly, respondent failed to meaningfully participate and benefit from the services offered, and the trial court did not clearly err by finding that reasonable reunification efforts were made.

Although respondent does not challenge the trial court's finding that there was clear and convincing evidence to terminate her parental rights under multiple statutory grounds, her "contention that reasonable services were not offered ultimately relates to the issue of sufficiency" of the evidence for termination of her parental rights.[3] *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005). Termination of parental rights is proper under MCL 712A.19b(3)(c)(*i*) if there is clear and convincing evidence that (1) more than 182 days have elapsed since the issuance of the initial dispositional order, (2) "[t]he conditions that led to the adjudication continue to exist," and (3) "there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." MCL 712A.19b(3)(c)(*i*).

At the time of the termination decision in June 2022, more than 182 days had elapsed since the November 2020 order of disposition. The conditions leading to adjudication included substance abuse and lack of income and housing. Respondent rectified her income and housing issues, but she failed to address her substance abuse. After consistently testing positive for methamphetamine, respondent produced some negative tests after November 30, 2021, but then tested positive for methamphetamine on March 22, 2022; she did not complete a drug screen thereafter. She also did not complete or actively participate in outpatient or inpatient services. Moreover, the trial court did not err by concluding that there was no reasonable likelihood that respondent would address her substance abuse within a reasonable time. Respondent seems to concede on an appeal that completion of an inpatient treatment program was a necessary condition to reunification. But at the termination hearing, she maintained that she no longer used

---

[3] We review for clear error a trial court's decision that a ground for termination of parental rights exists. *In re Williams*, 286 Mich App at 271 (quotation marks and citation omitted).

methamphetamine and so there was no reason to believe that she was willing to engage in and complete inpatient treatment.

Because only one statutory ground is necessary to terminate parental rights, we will not address whether termination was appropriate under MCL 712A.19b(3)(j). See *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

Affirmed.

/s/ Douglas B. Shapiro
/s/ James Robert Redford
/s/ Christopher P. Yates