*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* D. A. STORY, JR., Minor.

UNPUBLISHED
February 26, 2025
1:03 PM

No. 371170
Wayne Circuit Court
Family Division
LC No. 2021-000895-NA

Before: MARIANI, P.J., and RIORDAN and FEENEY, JJ.

PER CURIAM.

Respondent-father, appeals as of right the trial court's order terminating his parental rights to the minor child, DAS, under MCL 712A.19b(3)(g) (failure to provide proper care and custody) and MCL 712A.19b(3)(j) (child will be harmed if returned to the parent). The Department of Health and Human Services (DHHS) sought and obtained termination of respondent's parental rights at the initial disposition despite failing to even allege the existence of an exception to its duty to provide reasonable efforts toward reunification. Therefore, we reverse.

## I. FACTS

Leading up to this case, respondent and DAS's mother had been in a relationship for seven years, and they had lived together for all seven years. Three children lived with them: DAS, AT, and JD; however, respondent was only the father to DAS. In September 2021, respondent became incarcerated for charges related to domestic violence, first-degree home invasion, kidnapping, fourth-degree child abuse, and assault with intent to do great bodily harm involving DAS, his mother and the other children in the home.

In October 2021, a lengthy petition was filed that requested the trial court remove the children and terminate respondent's parental rights on the basis of sexual abuse, domestic violence, improper supervision, unfit home, neglect, and threatened harm. The petition detailed Children's Protective Services' (CPS) involvement with the family, spanning back to 2006. The petition further detailed respondent's prior acts of domestic violence against another partner; his active warrants; a no-contact order with DAS's mother; and his lengthy criminal history, including

among other charges, domestic violence, felony assault with a dangerous weapon, and operating while intoxicated.

The preliminary hearing was continued for about a month and a half because respondent claimed that he had tribal heritage; however, no tribal heritage was found. Respondent waived probable cause, and the trial court authorized the petition.

In June 2022, the trial court held an initial disposition hearing. DAS's mother explained that respondent had been physically assaulting her for five of the seven years of their relationship, which the children had witnessed—JD and AT also testified regarding this pattern of abuse. DAS's mother also testified that respondent had threatened to kill her, AT, and JD.

JD testified that when he was 7 years old, respondent "pulled out his penis at me." JD clarified that respondent "made [him] get on [his] knees and then [respondent] was unbuttoned [sic] his jeans and he was showing it to me." Respondent rubbed JD's head during this incident. AT testified that when she was 10 or 11 years old, respondent "took his private area out and just walk[ed] around the house." AT told him to stop, and respondent did. DAS's mother testified that respondent was an alcoholic, and a few weeks before JD's allegations of sexual abuse, respondent came to bed intoxicated, stating that if she "didn't give it to him that he was going to go get it from her and [she] assumed the only her in the house was [AT]."

DAS's mother further testified that when she confronted respondent about JD's allegations of sexual abuse, respondent replied, "I told you we should have got rid of him." DAS's mother explained that respondent then "grabbed the butcher knife and he threatened if I called the police he was going to hurt one of us." Respondent then slept with the butcher knife, which made DAS's mother hold off on making a police report for 24 to 48 hours. A safety plan was put into place, instructing DAS's mother not to return home until respondent was incarcerated.

Nevertheless, on the evening of September 3, 2021, respondent let himself into the home and saw a mark on DAS's mother's neck. DAS's mother testified that respondent stated, "Is that a hickey bitch," and before she could respond, he grabbed her throat with his hands and took her to the floor. DAS's mother explained that she could not breathe and she had felt like she was going to die—she remembered waking up after she had urinated on herself. This incident happened while all three children were home. The next morning, respondent returned and attempted to come through the front door, but furniture was blocking it. Respondent was eventually able to come through the side window. DAS's mother testified that respondent grabbed DAS out of her arm "and we kind of did a tug of war [with DAS] before he left." DAS's mother was dragged across the living room and eventually let go of DAS.

On June 2, 2022, the trial court assumed jurisdiction and found that there were grounds to terminate respondent's parental rights under MCL 712A.19b(3)(g) and MCL 712A.19b(3)(j). The trial court explained that it was concerned with the domestic violence evidence that was presented. The trial court scheduled another hearing to address DAS's best interests. In the interim, the trial court ordered that respondent could have supervised Zoom visits while he was incarcerated.

A "continued bench trial" was scheduled for October 6, 2022 to allow respondent to work through his criminal charges; however, a hearing never occurred on that day. Instead, a hearing

was held on October 27, 2022, at which the trial court noted that respondent had been offered a plea, a plea was withdrawn, and a jury trial was scheduled for March 2023. Accordingly, the trial court rescheduled the continued bench trial for April 13, 2023. Nevertheless, this hearing appears to have occurred on May 31, 2023, and it was run more like a status hearing rather than a best-interest hearing.

At the May 31, 2023 hearing, respondent indicated that he had been out of jail for four months despite having a jury trial scheduled in July 2023 for his criminal matter. While imprisoned, respondent voluntarily completed a moral recognition therapy course and a drug rehabilitation course. Respondent had been participating in two supervised visits with DAS every week, which DHHS expressed no concerns with.

The beginning of a best-interest hearing took place on August 23, 2023; however, the primary case worker did not complete her testimony. That caseworker was then unable to be located, which resulted in another delay. The trial court ultimately granted a request to strike her testimony, and the best-interest hearing restarted on April 4, 2024.

At the best-interest hearing, the parties chose not to present any new evidence—aside from respondent's clinic evaluation—or testimony before proceeding to closing arguments. The trial court began its analysis by acknowledging that there had not been any issues with respondent's supervised parenting-time visits. The trial court also acknowledged that DAS wanted to see respondent, but that DAS had also called respondent "a bad guy." The trial court noted respondent's ongoing history of "extreme" domestic violence, and explained that because respondent denied this history, domestic violence treatment would not be able to help him. Accordingly, the trial court found that it was in DAS's best interests to terminate respondent's parental rights. In the trial court's order, the trial court stated that DAS was "placed with relatives and will not be made available for adoption, however, for the reasons stated on the record, the Court finds termination to be in [DAS's] best interests."[1] Respondent now appeals.

## II. TERMINATION AT INITIAL DISPOSITION

At the outset, we conclude that the trial court erred by terminating respondent's parental rights at the initial disposition instead of ordering reasonable efforts toward reunification when no aggravated circumstances existed—particularly in light of the fact that the adjudication and the dispositional hearings occurred years apart.[2] We acknowledge that this issue was not raised by either party. It is well established, however, that "this Court possesses the discretion to review a legal issue not raised by the parties." *In re Walters*, ___ Mich App ___, ___; ___NW3d ___ (2025)

---

[1] The trial court merely explained that DAS was "not going to be made available for adoption at least at this stage." There was no discussion of whether DAS's relatives were willing to adopt him.

[2] On June 2, 2022, the trial court assumed jurisdiction and found that there were grounds to terminate respondent's parental rights under MCL 712A.19b(3)(g) and MCL 712A.19b(3)(j). The trial court issued its order terminating respondent's parental rights on April 26, 2024.

(Docket No. 369318); slip op at 2-3, citing *Tingley v Kortz*, 262 Mich App 583, 588; 688 NW2d 291 (2004). Accordingly, we exercise our discretion to review this issue.

"In general, when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005). Reasonable efforts toward reunification are not necessary if any of the following circumstances are present:

(a) There is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of the child protection law, 1975 PA 238, MCL 722.638.

(b) The parent has been convicted of 1 or more of the following:

(*i*) Murder of another child of the parent.

(*ii*) Voluntary manslaughter of another child of the parent.

(*iii*) Aiding or abetting in the murder of another child of the parent or voluntary manslaughter of another child of the parent, the attempted murder of the child or another child of the parent, or the conspiracy or solicitation to commit the murder of the child or another child of the parent.

(*iv*) A felony assault that results in serious bodily injury to the child or another child of the parent.

(c) The parent has had rights to the child's siblings involuntarily terminated and the parent has failed to rectify the conditions that led to that termination of parental rights.

(d) The parent is required by court order to register under the sex offenders registration act. [MCL 712A.19a(2).]

MCL 722.638(2) states that DHHS shall submit a petition, requesting termination of parental rights at the initial dispositional hearing, if any of the following aggravated circumstances are present:

(1) The department shall submit a petition for authorization by the court under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, if 1 or more of the following apply:

(a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child and the abuse included 1 or more of the following:

(*i*) Abandonment of a young child.

(*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

(*iii*) Battering, torture, or other serious physical harm.

(*iv*) Loss or serious impairment of an organ or limb.

(*v*) Life threatening injury.

(*vi*) Murder or attempted murder.

(b) The department determines that there is risk of harm, child abuse, or child neglect to the child and either of the following is true:

(*i*) The parent's rights to another child were terminated as a result of proceedings under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, or a similar law of another state and the parent has failed to rectify the conditions that led to the prior termination of parental rights.

(*ii*) The parent's rights to another child were voluntarily terminated following the initiation of proceedings under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, or a similar law of another state, the parent has failed to rectify the conditions that led to the prior termination of parental rights, and the proceeding involved abuse that included 1 or more of the following:

(A) Abandonment of a young child.

(B) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

(C) Battering, torture, or other serious physical harm.

(D) Loss or serious impairment of an organ or limb.

(E) Life-threatening injury.

(F) Murder or attempted murder.

(G) Voluntary manslaughter.

(H) Aiding and abetting, attempting to commit, conspiring to commit, or soliciting murder or voluntary manslaughter. [MCL 722.638(1).]

"Reasonable efforts to reunify the child and family must be made in all cases except those involving the circumstances delineated in MCL 712A.19a(2)." *In re Simonetta*, 507 Mich 943, 943; 959 NW2d 170 (2021). "Nothing in the court rule suggests that termination may be granted at the initial disposition without the presence of an aggravating circumstance." *In re Walters*, ___ Mich App at ___; slip op at 6.

In this case, it is clear that none of the exceptions to DHHS's duty to provide reasonable efforts toward reunification apply. See MCL 712A.19a(2); MCL 722.638. In fact, DHHS did not cite MCL 712A.19a(2) or MCL 722.638 in its petition, and the trial court did not cite MCL 712A.19a(2) or MCL 722.638 in its termination order. Instead, the petition requested, and the trial court ordered, termination of respondent's parental rights pursuant to MCL 712A.19b(3)(g) and MCL 712A.19b(3)(j).[3]

There was no evidence that respondent abused DAS or a sibling of DAS,[4] MCL 722.638(1)(a), or that respondent's parental rights to another child were ever terminated, MCL 722.638(1)(b); MCL 712A.19a(2)(c). Moreover, respondent was never convicted of any charges listed in MCL 712A.19a(2)(b), or ordered to register as a sex offender, MCL 712A.19a(2)(d).

Accordingly, the trial court erred by terminating respondent's parental rights at the initial disposition without establishing the presence of aggravating circumstances. *In re Walters*, ___ Mich App at ___; slip op at 6. This error warrants reversal despite it not being preserved. *Id.* at ___; slip op at 7. Neither party raised, and the trial court did not address, whether DHHS established an exception to its responsibility to attempt reunification. Therefore, this issue is not preserved. See *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). "Unpreserved issues in termination of parental right cases are reviewed for plain error affecting substantial rights." *In re Walters*, ___ Mich App at ___; slip op at 7. This standard requires a respondent to "establish that (1) error occurred; (2) the error was 'plain,' i.e., clear or obvious; and (3) the plain error affected their substantial rights. And the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotation marks and citation omitted).

A clear or obvious error is one that is not subject to reasonable dispute. *In re Barber/Espinoza*, ___ Mich App ___, ___; ___NW3d ___ (2024) (Docket No. 369359); slip op at 8. This Court has held that the interpretation of MCL 722.638 and MCL 712A.19a(2) are clearly provided by the statutes' plain language; therefore, this is not an issue that is subject to a reasonable dispute. *In re Walters*, ___ Mich App at ___; slip op at 7; *In re Barber/Espinoza*, ___ Mich App at ___; slip op at 8. This Court has also found that when a trial court improperly failed to provide reasonable reunification efforts,

> the trial court's error prejudiced [the respondent] because (1) it is unclear how an aggrieved respondent could establish outcome-determinative error concerning the denial of reunification services altogether and (2) the error improperly dispensed with a critical aspect of a child protective proceeding—the requirement to offer reunification services before terminating parental rights—affected the very framework within which this case progressed, undermined the foundation of the rest of the proceedings, and impaired respondent's fundamental right to direct the

---

[3] The petition also listed MCL 712A.19b(3)(b)(*i*) as grounds for termination; however, the petitioner conceded this argument at trial.

[4] AT testified that she had seen respondent hurt JD multiple times; however, JD was DAS's cousin, not sibling.

care, custody, and control over her children. [*In re Walters*, ___ Mich App at ___; slip op at 7, citing *In re Barber/Espinoza*, ___ Mich App at ___; slip op at 9.]

"This analysis of the plain error rule's third prong applies equally to any case in which a court erroneously terminates a parent's rights in the absence of aggravating circumstances." *In re Walters*, ___ Mich App at ___; slip op at 7. Furthermore, "the fairness and integrity of the proceeding was seriously affected by the damage done to the framework in which this case progressed." *Id*.; slip op at 7. Because the trial court plainly erred by terminating respondent's parental rights at the initial disposition, without first providing reasonable efforts toward reunification or finding aggravating circumstances, we do not need not reach the issues presented on appeal—whether the statutory grounds have been proven by clear and convincing evidence and whether termination of respondent's parental rights was in DAS's best interests. See *id*. at ___; slip op at 6-7.

Accordingly, the trial court's order terminating respondent's parental rights is reversed. This case is remanded for additional proceedings. On remand, DHHS shall prepare a case service plan, and the trial court shall order that reasonable efforts be made toward reunification. We do not retain jurisdiction.

/s/ Philip P. Mariani
/s/ Michael J. Riordan
/s/ Kathleen A. Feeney