*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M V KEENAN, Minor.

UNPUBLISHED
May 2, 2024

No. 367197
Washtenaw Circuit Court
Family Division
LC No. 20-000080-NA

Before: SWARTZLE, P.J., and SERVITTO and GARRETT, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor child, MK, under MCL 712A.19b(3)(h) (incarcerated parent cannot provide for the child's proper care and custody), (3)(i) (parental rights to siblings have been terminated because of serious and chronic neglect or abuse), and (3)(j) (reasonable likelihood of harm). We affirm.

## I. FACTS

In the months leading up to MK's birth, mother was incarcerated for charges stemming from her stabbing of a man. No plan was made for the child's placement during mother's detainment. Mother was brought to a hospital for MK's birth and, both prior to and while in the hospital after his birth, she demonstrated serious unstable mental-health behaviors. While MK was in the hospital after his birth, he was being monitored for withdrawal symptoms from mother's prescribed methadone prescription. All the above was noted in an August 21, 2020 petition filed by the Department of Health and Human Services (DHHS) seeking to terminate mother's parental rights, as was mother's lengthy criminal history, her prior history with Children's Protective Services (CPS), and the termination of her rights to two other children. Mother remained incarcerated throughout the proceedings and the trial court took jurisdiction over MK, then ultimately terminated mother's rights to MK on July 24, 2023. This appeal followed.

## II. REASONABLE EFFORTS

Mother first argues that the trial court failed to make an aggravated-circumstances determination under MCL 712A.19a(2) and that, therefore, the DHHS was required to make reasonable efforts to reunite her and the child. Mother also asserts that the services provided by the DHHS were insufficient and the trial court's termination order should be vacated. We disagree.

-1-

Generally, we review for clear error a "trial court's factual finding that petitioner made reasonable efforts to reunify" the respondent-parent with the child. *In re Atchley*, 341 Mich App 332, 338; 990 NW2d 685 (2022). However, because mother failed to object to the DHHS's services, this issue is not preserved for appellate review. *In re MJC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 365616); slip op at 2. Therefore, our review is "limited to plain error affecting substantial rights." *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*. at 9. And an error is plain if it is "clear or obvious," meaning that the error is not "subject to reasonable dispute." *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018) (quotation marks and citations omitted).

"In general, when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005). The case service plan must outline "the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017). The case service plan must include, among other things, "[e]fforts to be made by the child's parent to enable the child to return" home; "[e]fforts to be made by the agency to return the child" home; and a "[s]chedule of services to be provided to the parent, child, and if the child is to be placed in foster care, the foster parent, to facilitate the child's return to his or her home or to facilitate the child's permanent placement." MCL 712A.18f(3). "If a child continues in placement outside of the child's home, the case service plan shall be updated and revised at 90-day intervals . . . ." MCL 712A.18f(5). Further, at each review hearing, the court is required to consider, among other things, "[c]ompliance with the case service plan with respect to services provided or offered to the child and the child's parent," and "whether the parent . . . has complied with and benefited from those services." MCL 712A.19(6)(a).

Notably, "termination is improper without a finding of reasonable efforts." *In re Hicks/Brown*, 500 Mich at 90. Reasonable efforts to reunify the child and family must be made in all circumstances except those articulated in MCL 712A.19a(2). Among those articulated in MCL 712A.19a(2) is that "[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of the child protection law, 1975 PA 238, MCL 722.638." MCL 712A.19a(2). The parties spend a great deal of time arguing about whether the trial court made a judicial determination that mother subjected the child to aggravated circumstances, but fail to recognize that reasonable efforts toward reunification also need not be made if "[t]he parent has had rights to the child's siblings involuntarily terminated and the parent has failed to rectify the conditions that led to that termination of parental rights." MCL 712A.19a(2)(c).

In the petition, it was noted that mother's rights to two other children had been terminated due to ongoing substance abuse and lack of compliance with her court ordered service plans. Both children, when born, tested positive for drugs, and during the termination cases, mother had been provided with drug screens, psychological evaluations referral, and substance abuse counseling, among other things. According to the petition, mother failed to benefit from the services provided. The petition indicated that termination of mother's parental rights to MK was appropriate because her mental health was unstable and MK was born addicted to methadone, which mother was taking to address her ongoing drug addiction. Thus, mother's rights to MK's siblings had been terminated

and she had still failed to rectify the conditions that had led to the termination of her rights to those children. Under MCL 712A.19a(2)(c), then, no reasonable efforts toward reunification with MK needed to be made. Accordingly, there was no plain error, and mother's rights were not affected.

To the extent mother argues that the trial court had to make an on-the-record judicial determination that reasonable efforts were not required because "[t]he parent has had rights to the child's siblings involuntarily terminated and the parent has failed to rectify the conditions that led to that termination of parental rights," MCL 712A.19a(2)(c), mother again cannot show plain error. Unlike MCL 712A.19a(2)(a), which includes explicit language about a "judicial determination," subsection (2)(c) does not. Caselaw from this Court has not resolved whether, and in what manner, a trial court must make an express finding that reasonable efforts are not required under subsection (2)(c). Combined with the statute's silence, the lack of clarity in caselaw means that any error, assuming one even occurred, is not clear or obvious. Mother is therefore not entitled to relief under plain-error review.

## III. STATUTORY GROUNDS

Mother next argues that the trial court erred by finding by clear and convincing evidence that statutory grounds for termination existed pursuant to MCL 712A.19b(3)(h) and (3)(j). Mother additionally argues that there was insufficient evidence to support termination under MCL 712A.19b(3)(i) because, although evidence was presented that mother's parental rights to her two older children had been terminated, very little evidence was presented to establish why that termination occurred. We disagree.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). We review the trial court's determination of statutory grounds for clear error. *Id.*; MCR 3.977(K). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). "Appellate courts are obliged to defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error." *In re Rood*, 483 Mich 73, 90; 763 NW2d 587 (2009).

The trial court terminated mother's rights to the child pursuant to MCL 712A.19b(3)(h), (3)(i), and (3)(j). Those provisions state in relevant part as follows:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (h) The parent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years, and the parent has not provided for the child's proper care and custody, and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(i) Parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions that led to the prior termination of parental rights.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Termination under MCL 712A.19b(3)(h) is authorized only if each of the "three conditions set forth in the statute are met." *In re Baham*, 331 Mich App 737, 753; 954 NW2d 529 (2020) (quotation marks and citation omitted). The trial court must first "find by clear and convincing evidence that the respondent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years . . . ." *Id.* at 754 (quotation marks and citation omitted). "The second condition requires the trial court to find that the parent has not provided for the child's proper care and custody." *Id.* (quotation marks and citation omitted). The final condition "is forward-looking; it asks whether a parent 'will be able to' provide proper care and custody within a reasonable time." *In re Mason*, 486 Mich at 161. Therefore, "a parent's past failure to provide care because of his [or her] incarceration . . . is not decisive." *Id.*

In this case, the child was removed from mother's care, and the DHHS filed a petition seeking termination of mother's parental rights at the initial disposition in August 2020. According to testimony given during the termination proceeding, mother was incarcerated at the time she gave birth to the child, and her earliest release date was in August 2024. Therefore, by the time of the termination proceeding, the child had been deprived of a normal home for a period exceeding two years. Further, because mother was incarcerated, it was clear that she was personally unable to provide for the child's proper care and custody. However, a respondent-parent's inability to personally provide care for their child is not dispositive because a respondent-parent can "achieve proper care and custody through placement [of the child] with a relative." *Id.* at 161 n 11.

In this case, the record reflects that mother identified her sister and her mother as possible relative placements for the child during the case; however, mother's sister declined placement, and mother's mother initially declined placement and only later expressed her renewed interest in taking the child at the time of the termination hearing. Therefore, the record does not reflect that mother provided proper care and custody for the child through a relative placement. Accordingly, the first two conditions of MCL 712A.19b(3)(h) were satisfied.

As to the third condition, mother had, at a minimum, about 13 months remaining in her prison sentence at the time her parental rights were terminated in July 2023. The child was about three years old at that point, and mother had been physically absent from his life during that entire period. In our view, another year or more of incarceration, plus some additional time that will be needed for mother to show continued progress upon release from prison, was an unreasonable amount of time for this child to await whether mother could provide proper care and custody.

-4-

Clear and convincing evidence therefore established that mother will not be able to provide proper care and custody to the child "within a reasonable time considering the child's age." MCL 712A.19b(3)(h).

Given the above, the trial court's finding that mother will not be able to provide proper care and custody for MK within a reasonable time considering his age was not in error and accordingly, the trial court did not clearly err by terminating mother's parental rights under MCL 712A.19b(3)(h).[1]

## IV. JURY-TRIAL WAIVER

Mother lastly argues that her due-process rights were violated because the trial court neglected to ensure that her jury-trial waiver was knowing and voluntary and failed to seek explicit assurance from her GAL that her waiver was knowing and in her best interests. We disagree.

Generally, we review "the interpretation and application of statutes and court rules `de novo." *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610 (2019). However, because mother failed to raise this issue before the trial court, it is not preserved for appellate review, *In re Utrera*, 281 Mich App at 8, and "adjudication errors raised after the trial court has terminated parental rights are reviewed for plain error." *In re Ferranti*, 504 Mich at 29. Under a plain error analysis, "[t]he respondents must establish that (1) error occurred; (2) the error was 'plain,' i.e., clear or obvious; and (3) the plain error affected their substantial rights." *Id*.

The right to a jury in a child protective proceeding only exists at the trial or adjudication phase. MCR 3.911(A). A party in a child protective proceeding may demand a jury trial by timely filing a written demand with the trial court. MCR 3.911(B). Notably, a party who fails to file a jury-trial demand waives a trial by jury. MCR 2.508(D)(1). Further, "[a] demand for trial by jury may not be withdrawn without the consent, expressed in writing or on the record, of the parties or their attorneys." MCR 2.508(D)(3).

In the instant case mother initially demanded a jury trial, and, despite the delay caused as a result of the COVID-19 pandemic, mother continued to assert her right to a jury trial from the time of her first request in October 2020 until February 2022. In February 2022, mother informed the trial court that she was no longer requesting a jury trial. In July 2022, mother stated that she wanted to have a nonjury trial, but quickly changed her mind, stating that she preferred a jury trial. In October 2022, mother again informed the trial court that she would rather have a nonjury trial. Mother notes on appeal, and the record reflects, that this request was given after mother endured a severe decline in her mental health after the prison took her off methadone, and the request coincided with mother's contemplation on the record of relinquishing her parental rights. However, in November 2022, mother again indicated that she wanted a nonjury trial. It was not until that point that the trial court scheduled a bench trial on the matter. Therefore, the record

---

[1] Because a trial court need only find that one of the statutory grounds for termination in MCL 712A.19b(3) has been met by clear and convincing evidence, *In re VanDalen*, 293 Mich App at 139, we find no reason to address the remaining statutory grounds raised by mother on appeal.

reflects that mother was given several opportunities to contemplate her decision to waive her demand for a jury trial before the trial court proceeded with a bench trial.

Mother argues that the trial court did not meet its duty to ensure that her jury-trial waiver was knowing and voluntary. Mother cites authority that holds that, when a respondent-parent enters a plea to jurisdiction, the trial court must advise the respondent-parent of the consequences of his or her plea and the rights that he or she is relinquishing. See *In re Ferranti*, 504 Mich at 30. Mother's reliance on this case is misguided. The holding in *In re Ferranti* specifically relates to pleas, not waivers of jury-trial demands. *Id.* While MCR 3.971 requires that, before a trial court accepts a plea, it must advise the respondent of the consequences of the plea and the rights that he or she is relinquishing, no parallel court rule exists concerning jury-trial waivers in the civil/child protective proceeding context. In fact, all that is needed for a demand for a jury trial to be withdrawn in a child protective proceeding is consent by the respondent-parent on the record or in writing. MCR 2.508(D)(3). The trial court, therefore, had no obligation to inform mother of the consequences of her jury-trial waiver or explain the rights that she was relinquishing by withdrawing her jury-trial demand. Despite this, the trial court allowed mother several months to contemplate whether she truly wanted to withdraw her jury-trial demand. The record, therefore, reflects that the trial court did not err by accepting mother's withdrawal of her jury-trial demand and proceeding with a bench trial.

Mother also asserts that the trial court violated her due-process rights when it failed to explicitly seek assurance from her GAL that mother's jury-trial waiver was knowing and in her best interests. Mother again cites authority that discusses the trial court's duties concerning pleas to jurisdiction in child protective proceedings. Although mother's GAL was appointed to assist her throughout the case, there was no requirement that her GAL ensure that mother understood the consequences of her jury-trial waiver and the rights that she was relinquishing. Again, despite this, the trial court still provided mother the opportunity to converse with her GAL about her choice to proceed with a bench trial and listened to her GAL's concerns about mother's mental health throughout the case. Therefore, the record establishes that the trial court ensured that mother's GAL was actively involved in the case to safeguard mother's rights. Accordingly, the trial court did not violate mother's due-process rights by accepting her withdrawal of her jury-trial demand and proceeding with a bench trial.

Affirmed.

/s/ Brock A. Swartzle
/s/ Deborah A. Servitto
/s/ Kristina Robinson Garrett